BOSTON TOW BOAT COMPANY *vs.* MEDFORD NATIONAL BANK
& another.

CHARLES F. ADAMS & others, trustees, petitioners.

Suffolk.    December 3, 1918. — January 6, 1919.

Present: RUGG, C. J., LORING, BRALEY, & DE COURCY, JJ.

*Limitations, Statute of. Corporation,* Validity of indorsement upon certificate of stock. *Contract,* What constitutes.

When a purchaser of shares of stock of a corporation presents to the corporation an order for the transfer of the shares purporting to be signed by the owner of the shares, accompanied by a certificate representing them, and demands a new certificate in exchange, he impliedly represents that the signature is valid.

If, upon the presentation of such an order and certificate, the corporation issues a new certificate as requested and, it afterwards appearing that the signature to the order was forged, is required to respond in damages to the owner of the shares, it has a right of action for breach of the warranty against the alleged purchaser to whom it issued the new certificate, although the alleged purchaser acted in good faith throughout the transaction.

The warranty above described is broken upon the issue by the corporation of the new certificate in reliance upon it, and any action founded upon such breach must be brought within six years thereafter or it is barred by R. L. c. 202, § 2.

The presentation of such an order for transfer accompanied by the certificate representing the shares, upon which a new certificate is issued to the alleged purchaser, does not constitute a contract by the alleged purchaser to indemnify the corporation against loss or damage which it shall suffer in case the signature to the order is not genuine, which would not be broken until the loss or damage is suffered.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 7, 1915, by the Boston Tow Boat Company, a Massachusetts corporation, against the Medford National Bank and the Medford Trust Company, seeking reimbursement for amounts which the plaintiff was compelled to pay by reason of the transactions described in the opinion. Also a

PETITION, filed in the Supreme Judicial Court on December 5, 1917, by the trustees of the Massachusetts Gas Companies, successors in title to the Boston Tow Boat Company, alleging its dissolution and seeking the appointment of a receiver under St. 1903, c. 437, § 53, as amended by St. 1905, c. 156.

The bill in equity was previously before this court, when it was decided, as reported in 228 Mass. 484, that the suit could not be maintained by the corporation more than three years after its dissolution. Thereafter the petition for a receiver above described was allowed, and a motion was filed by the receiver for leave to prosecute the bill in equity. The defendants in the suit in equity also filed a motion that the bill be dismissed. The motion of the defendants was denied and that of the receiver was allowed by *Pierce,* J. The case then was heard by the same single justice upon the merits and by him was reserved for determination by the full court.

*T. Hunt,* for the plaintiff and receiver.

*J. E. McConnell,* (*E. T. McKnight* with him,) for the defendants.

DE COURCY, J.   In May, 1902, the Medford National Bank held two promissory notes which purported to be signed by Susan M. Stuart, and also thirty-one shares of the stock of the Boston Tow Boat Company, standing in her name, as collateral security for the payment of the notes, accompanied by a blank transfer and power of attorney. In compliance with an order purporting to be signed by Mrs. Stuart, the bank sent the certificates of stock to its brokers to be sold, and they in turn sent them to Francis Henshaw and Company whose business it was to sell unlisted stocks at auction. Later the certificates for the thirty-one shares and the transfer and power of attorney with the names of the purchasers inserted were presented to the plaintiff, the Boston Tow Boat Company, and were cancelled and new certificates were issued in the names of the purchasers. Afterwards it was discovered that the signatures of Susan M. Stuart to the notes, the transfer and the order were forged; and she brought a bill in equity against the Boston Tow Boat Company. A decree was entered in her favor for $6,000, which was paid in April, 1915. See *Pratt* v. *Taunton Copper Manuf. Co.* 123 Mass. 110. The Medford National Bank had been notified to defend that suit. The Medford Trust Company in 1908 succeeded to the business of the Medford National Bank, taking over its assets and assuming its liabilities.

The first of these proceedings is a suit brought by the Boston Tow Boat Company to compel the bank and the trust company to refund the money it paid in satisfaction of Mrs. Stuart's execution, and the expenses incurred in defending her suit. It came before the

full court in October, 1917; but the reservation was discharged for the reason that the Boston Tow Boat Company had been dissolved by St. 1913, c. 277, and no decree could be entered in favor of or against it. *Boston Tow Boat Co.* v. *Medford National Bank*, 228 Mass. 484.

Subsequently a petition was brought by the trustees of the Massachusetts Gas Companies, owners of all the stock of the Boston Tow Boat Company, asking for the appointment of a receiver for the latter company under St. 1903, c. 437, § 53, as amended by St. 1905, c. 156. The petition was allowed. Later a motion by the banks to vacate the decree was denied; and the receiver was substituted for the Boston Tow Boat Company as plaintiff in the original suit. Both proceedings are now before us for consideration.

Assuming, but not deciding, that the receiver has succeeded to all the rights of the Boston Tow Boat Company to enforce in his own name the alleged liability incurred by the Medford National Bank; that Francis Henshaw and Company were acting as agents of the bank in having the stock transferred to the purchasers; and that all preliminary questions are established in his favor, nevertheless we are of opinion that the statute of limitations has barred his right of recovery.

When a purchaser of stock presents to the corporation a transfer of shares accompanied by the certificate, and demands a new certificate in exchange, he impliedly represents that the transfer is valid. Even though the forged transfer and power of attorney purporting to be signed by Susan M. Stuart were presented in good faith, the Boston Tow Boat Company which issued new certificates upon the faith of them had a right of action on the implied warranty. *Boston & Albany Railroad* v. *Richardson*, 135 Mass. 473. That warranty was made in 1902, and the breach of it was discovered the same year, when Mrs. Stuart brought her suit against the Boston Tow Boat Company for a new certificate. Accordingly the plaintiff's right of action was barred when the present suit was brought in April, 1915, unless the statute of limitations commenced to run, not at the time of the breach of warranty, or even when the breach was discovered, but at the time when the Boston Tow Boat Company sustained damages in consequence thereof by the payment of the Stuart execution.

Admittedly the general rule in cases of breach of contract is, that the statute begins to run from the time of the breach. *Perkins* v. *Whelan,* 116 Mass. 542. See cases collected in 15 L. R. A. (N. S.) 156, note. The contention of the plaintiff is that in such a transaction as the present, the implied representation that the signature was genuine constitutes not merely an implied warranty, but a contract of indemnification against loss or damage, and that accordingly the statute did not begin to run until the damage actually occurred. The case of *Boston & Albany Railroad* v. *Richardson, supra,* on which he largely relies, does not support this contention. In that case it was held that one who surrendered a share certificate bearing a forged indorsement, and obtained in exchange a new certificate, in ignorance of the forgery, was liable upon an implied warranty of the genuineness of the signature to the transfer. His liability was based upon the analogies of the implied warranty of title in a sale of chattels, and the implied warranty of genuineness of the previous signatures by the seller of a promissory note. There was no suggestion that the implied contract is one of indemnification. *Hartley* v. *Rotman,* 200 Mass. 372. *Cabot Bank* v. *Morton,* 4 Gray, 156. *Merriam* v. *Wolcott,* 3 Allen, 258. See *Allen* v. *South Boston Railroad,* 150 Mass. 200, 204. *Oliver* v. *Bank of England,* [1901] 1 Ch. 652, affirmed [1902] 1 Ch. 610, and *sub nom. Starkey* v. *Bank of England,* [1903] A. C. 114, cited by the plaintiff, seems to have proceeded on the same principle. It was held that Starkey, by inducing the corporation to allow him to transfer stock on its books under a forged power of attorney, thereby represented that he had authority to make the transfer, and impliedly warranted that he had that authority. See articles in 17 Harv. Law Rev. 373 and 543. It is true that in *Sheffield Corp.* v. *Barclay,* [1905] A. C. 392, a case similar in material particulars to Starkey's case, the House of Lords went further, Lord Davey saying, "I can see no legal reason why, in circumstances like those of the present case, it should not be held, if necessary, that the true contract to be implied from those circumstances is not only a warranty of the title, but also an agreement to keep the person in the position of the appellants indemnified against any loss resulting to them from the transaction." But we find no warrant in the Richardson case, or in our decisions on which it was based, for implying such an indefinite and protracted

contract of indemnity from the innocent presentation of a forged transfer by the purchaser of stock. See, also; *Perkins* v. *Whelan, ubi supra.* The precise question under consideration arose in *Lehigh Coal & Navigation Co.* v. *Blakeslee,* 189 Penn. St. 13, where the defendant, a broker, in good faith guaranteed in writing the signature to a power of attorney to transfer stock. It was held that the implied promise of the guarantor was broken as soon as made, and that the right of action accrued and the statute of limitations began to run at that time. That the statute is also available to the corporation see *St. Romes* v. *Levee Steam Cotton Press Co.* 127 U. S. 614; *Yeager* v. *Bank of Kentucky,* 127 Ky. 751; *Glover* v. *National Bank of Commerce,* 156 App. Div. (N, Y.) 247.

Regardless of the other grounds of defence, the statute of limitations is an effective bar to the plaintiff's recovery; and the entry must be

*Bill dismissed.*