INTERNATIONAL MOBILES CORP. *vs.* CORROON & BLACK/
FAIRFIELD & ELLIS, INC.

No. 89-P-565.

Suffolk. May 15, 1990. - September 14, 1990.

Present: KASS, SMITH, & GILLERMAN, JJ.

*Limitations, Statute of. Negligence*, Insurance agent, In procuring insurance policy. *Practice, Civil*, Summary judgment. *Consumer Protection Act*, Insurance. *Contract*, To obtain insurance.

In a civil action stating claims for negligence and violation of G. L. c. 93A, against an insurance agent for failure to obtain excess liability coverage, the causes of action accrued when the plaintiff sustained damage or loss, i.e., upon settlement of a tort claim to which the plaintiff was bound to contribute, with the result that the claims, filed within three years of the settlement agreement, were not barred by the statutes of limitations set forth in G. L. c. 260, §§ 2A and 5A. [217-221]

A breach of contract claim brought in September, 1987, against an insurance agent for failure to obtain excess liability coverage in 1977 was barred by the statute of limitations set forth in G. L. c. 260, § 2; and even if the "discovery rule" were to be applied, the action was barred, where the plaintiff was notified by the defendant in March, 1981, that the agent had failed to procure the insurance policy. [221-223]

CIVIL ACTION commenced in the Superior Court Department on September 25, 1987.

The case was heard by *Elbert Tuttle*, J., on a motion for summary judgment.

*Alan K. Posner* for the plaintiff.

*James D. Smeallie* (*Joshua C. Krumholz* with him) for the defendant.

KASS, J. Under that line of decisions — the most recent example is *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204 (1990) — which considers when an action accrues for purposes of applying a statute of limitations, discovery of the wrong and, in negligence cases, the concurrence of some harm trigger

the running of the limitations period.[1] We conclude that in the case before us, an action against an insurance agent for failure to place coverage, the statute of limitations did not begin to run on the negligence and G. L. c. 93A counts until the plaintiff suffered harm by reason of settlement of an underlying tort action. As to a contract claim, however, we decide that the statute of limitations bars the action. We, therefore, reverse in part and affirm in part a judgment for the defendant entered in the Superior Court.

Judgment was entered on the basis of the allowance of a motion for summary judgment. The material facts, as is necessary if a case is to be considered on a motion for summary judgment, are not in dispute. See Mass.R.Civ.P. 56, 365 Mass. 824 (1974); *Federal Deposit Ins. Corp.* v. *Csongor*, 391 Mass. 737, 740 (1984). We summarize those facts.

International Mobiles Corp. ("Mobiles"), the plaintiff, leases ice cream vans to street vendors. From 1973 to 1979, Mobiles engaged the defendant Corroon & Black/Fairfield & Ellis, Inc. ("Corroon"), an insurance broker, to advise it about insurance needs and to purchase necessary coverage. Among a number of liability policies placed by Corroon for Mobiles in 1976 and 1977 was an excess coverage fleet policy with Northeastern Fire Insurance Company of Pennsylvania ("NFI"), covering ice cream vans operated by lessees — so Mobiles thought — in Maryland, Pennsylvania, Rhode Island, and Virginia. Mobiles paid an $8,500 insurance premium for NFI's 1977 coverage.

On June 16, 1977, a five year old girl was badly hurt in Portsmouth, Rhode Island, while buying ice cream from a van leased from Mobiles. She was struck by an oncoming

---

[1]See *Hendrickson* v. *Sears*, 365 Mass. 83, 83-84 (1974); *Friedman* v. *Jablonski*, 371 Mass. 482, 485-486 (1976); *Franklin* v. *Albert*, 381 Mass. 611, 618-619 (1980); *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 130 (1982); *Olsen* v. *Bell Tel. Labs., Inc.*, 388 Mass. 171, 175 (1983); *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 268 (1985); *Cantu* v. *St. Paul Cos.*, 401 Mass. 53, 57 (1987); *Gore* v. *Daniel O'Connell's Sons, Inc.*, 17 Mass. App. Ct. 645, 647-648 (1984); *Salin* v. *Shalgian*, 18 Mass. App. Ct. 467, 469-470 & n.8 (1984); *Malapanis* v. *Shirazi*, 21 Mass. App. Ct. 378, 382-383 (1986); *Fidler* v. *Eastman Kodak Co.*, 714 F.2d 192, 198-199 (1st Cir. 1983).

automobile as she crossed the street to her home for more money. The girl's parents, on her behalf, brought a negligence action in 1980 against multiple defendants which, as to Mobiles, was based on the theory that the Mobiles van should have been equipped with flashing lights, horns, bells, and gongs to serve as warning and safety devices. Corroon notified Mobiles' insurance carriers, including, on January 19, 1981, NFI.

NFI responded on March 2, 1981, that the van involved in the Rhode Island accident was not included among those insured and that, indeed, only vehicles in Pennsylvania and Virginia were covered. Accordingly, NFI disclaimed coverage.

NFI's abstention from the field did not immediately alter the shape of the battle in Rhode Island. Mobiles' primary liability insurer, Wausau Insurance Company, assumed the defense for Mobiles. In June, 1986, after several days of trial, the case against Mobiles was settled for $380,000. Wausau paid the first $10,000. Mobiles had looked to NFI for the first level of excess coverage, between $10,000 and $100,000, and to First State[2] for the overage. First State agreed to "drop down" to $60,000 as the starting point of its excess coverage and to pay $320,000, provided Mobiles contributed $50,000. On September 25, 1987, well within the three years (see G. L. c. 260, § 2A) of when it was required for the first time to make a payment, but well beyond three years after the date of NFI's disclaimer, Mobiles commenced the action against Corroon.

1. *The negligence claim.* Negligence in the abstract does not support a cause of action. A negligence claim cannot be maintained and, therefore, does not accrue, without a showing of some harm resulting from the negligence. *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 742 (1978). *Dinsky* v. *Framingham*, 386 Mass. 801, 803 (1982). That some degree of harm came to the plaintiff as a result of the defendant's negligence is all that is required; the extent of the in-

---

[2]The record does not supply a more complete name for the tertiary insurer.

jury need not be ascertainable at the time of the accrual of the action. *Olsen* v. *Bell Tel. Labs., Inc.*, 388 Mass. 171, 175 (1983). *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 268-269 (1985). *Cantu* v. *St. Paul Cos.*, 401 Mass. 53, 57 (1987). *Bowen* v. *Eli Lilly & Co.*, 408 Mass. at 207. See *Levin* v. *Berley*, 728 F.2d 551, 553-555 (1st Cir. 1984).

In the general run of cases, negligence actions accrue when the accident happens and a person is injured. *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. at 741. The ladder collapses and the woman on it suffers a broken leg. Suspected negligence and harm are apparent, and the statute of limitations begins to run. See *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 129 (1982); *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. 99, 109 (1980). When negligence and harm are inherently unknowable, as in the case of an undiagnosed and asymptomatic disease, the running of the three-year limitations period begins "on the happening of an event likely to put the plaintiff on notice." *Hendrickson* v. *Sears*, 365 Mass. 83, 89-90 (1974). *White* v. *Peabody Constr. Co.*, 386 Mass. at 129. *Joseph A. Fortin Constr., Inc.* v. *Massachusetts Hous. Fin. Agency*, 392 Mass. 440, 443 (1984). *Bowen* v. *Eli Lilly & Co.*, 408 Mass. at 205-207. Notice here refers not to discovery of every fact necessary to prevail on the claim, but rather to discovery of the plaintiff's injury as causally connected to the defendant's negligence. *White* v. *Peabody Constr. Co.*, 386 Mass. at 130. *Salin* v. *Shalgian*, 18 Mass. App. Ct. 467, 470 (1984). The plaintiff receives notice, and the statutory period begins to run, when the plaintiff knows or reasonably should have known that it sustained appreciable harm as a result of the defendant's negligence. *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, 394 Mass. at 268. *Cantu* v. *St. Paul Cos.*, 401 Mass. at 57.

So it is that a negligence action may be maintained against an insurance agent or broker who undertakes to procure an insurance policy and fails to do so, *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 192 (1982), but not unless there has been some appreciable harm to the potential insured. See

*Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, 394 Mass. at 268. The failure to obtain insurance obviously will not cause injury in every case.[3] If no accident produces a claim, the failure will have been negligence in the abstract. See *Rae* v. *Air-Speed, Inc.*, 386 Mass. at 193. Some courts have said that legal injury has not occurred until the insured actually suffers the unprotected loss. See *Manzanita Park, Inc.* v. *Insurance Co. of N. America*, 857 F.2d 549, 558 (9th Cir. 1988), and cases cited; *Lipitz* v. *Washington Natl. Ins. Co.*, 513 F.Supp. 606, 607 (E.D. Pa. 1981). See, by analogy, cases involving failure to provide competent legal services, *Cantu* v. *St. Paul Cos.*, 401 Mass. at 53; *Salin* v. *Shalgian*, 18 Mass. App. Ct. at 468; *Pelletier* v. *Chouinard*, 27 Mass. App. Ct. 92 (1989); *Levin* v. *Berley*, 728 F.2d at 552. In those actions in negligence, the requirement that the plaintiff sustain appreciable harm was met when the plaintiff incurred expenses, most often associated with employing a new lawyer to prosecute or defend against an action which would not have occurred but for the defendant-attorney's negligence. See, e.g., *Pelletier* v. *Chouinard*, 27 Mass. App. Ct. at 95; *Manzanita Park, Inc.* v. *Insurance Co. of N. America.*, 857 F.2d at 558. It might be supposed that Mobiles' consciousness of contingent liability was damage enough, but the authorities are chary of treating the threat of future harm without realization of some tangible harm, like out-of-pocket payments, as the basis for concluding that damage has occurred and the cause of action has accrued. See *Levin* v. *Berley*, 728 F.2d at 553-554; *Whitcomb* v. *Pension Dev. Co.*, 808 F.2d 167, 171 (1st Cir. 1986); *Budd* v. *Nixen*, 6 Cal. 3d 195, 200-201 (1971); Prosser, Torts § 30 at 143 (4th ed. 1971).

In the instant case, although Mobiles had reason to think that Corroon had bungled when NFI responded in 1981 that its policy did not cover vehicles in Rhode Island, Mobiles incurred no expense nor, on this record, suffered any discern-

---

[3]More restricted coverage than was purchased would entitle the insured to a partial return of premium, if the premium charged was for the wider coverage.

ible detriment as a result of Carroon's negligence. The expense of Mobiles' defense, as we have noted, was borne entirely by Wausau and that relatively peculiar circumstance bears decisively on the outcome of the case. This is not a case where some damage had been sustained, as by the payment of legal fees, but its extent was unknown. See *Gore* v. *Daniel O'Connell's Sons, Inc.*, 17 Mass. App. Ct. 645, 648-649 (1984). Whether there is any harm at all is a question distinct from whether the magnitude of the harm is ascertainable, albeit definite. Mobiles in 1981 could not have maintained a cause of action against Corroon because it could allege no damage; any complaint would have been an altogether vulnerable object of a well pleaded motion to dismiss under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), or Mass.R.Civ.P. 56. When that is understood, resolution of this aspect of the case becomes apparent.

There is some transitory attraction to the idea, once a party becomes aware that it has been exposed to another's negligence, although damage has not yet materialized, that within three years from that awareness the potentially injured person be required to give unmistakable notice of potential liability to the allegedly negligent party by filing a lawsuit. The target party can then look to its defenses. The countervailing and more powerful consideration, however, which underlies the principle that damage is a prerequisite to a negligence action, is that it is unsound judicial policy to encourage the initiation of litigation in anticipation that liability may materialize. See *Gore* v. *Daniel O'Connell's Sons, Inc.*, 17 Mass. App. Ct. at 648; *Young* v. *Clinchfield R.R. Co.*, 288 F.2d 499, 502 (4th Cir. 1961). It is unwise to require persons to take out options on potential negligence actions.

As Mobiles filed its action in negligence against Corroon within three years of the settlement agreement to which Mobiles was bound to contribute, the action was not barred under G. L. c. 260, § 2A.

2. *The G. L. c. 93A claim.* For a cause of action under G. L. c. 93A, the relevant statutory period of limitations is

four years as set by G. L. c. 260, § 5A. *Levin* v. *Berley*, 728 F.2d at 555. The accrual date for a c. 93A cause of action is determined by the same principles dispositive of the accrual dates of general tort actions. *Paterson-Leitch Co.* v. *Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 993 n.10 (1st Cir. 1988). See, e.g., *Levin* v. *Berley*, 728 F.2d at 556.

In making out a c. 93A claim, the plaintiff must show a loss connected with the unfair or deceptive act. *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 850 (1983). *Shapiro* v. *Public Serv. Mut. Ins. Co.*, 19 Mass. App. Ct. 648, 657 (1985). The loss which the plaintiff must show in a c. 93A action is analogous, if not identical, to the appreciable harm the plaintiff sustains in a negligence action. Just as a cause of action in negligence accrues when the plaintiff knew or should have known of appreciable harm resulting from the defendant's negligence, the same standard is applicable to set the date of accrual in a c. 93A action. *Paterson-Leitch Co.* v. *Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d at 994. The date of accrual for Mobiles' c. 93A action, therefore, is also the date of settlement in June, 1986. As the limitations period for the c. 93A action is a year longer, that count of the plaintiff's action is, obviously, not time barred.

3. *The breach of contract claim.* A cause of action for breach of contract accrues at the time of the breach. *Boston Tow Boat Co.* v. *Medford Natl. Bank*, 232 Mass. 38, 41 (1919). *Campanella & Cardi Constr. Co.* v. *Commonwealth*, 351 Mass. 184, 185 (1966). *DiGregorio* v. *Commonwealth*, 10 Mass. App. Ct. 861, 862 (1980). This rule applies even though a specific amount of damages is unascertainable at the time of the breach or even if damages may not be sustained until a later time. *DiGregorio* v. *Commonwealth*, 10 Mass. App. Ct. at 862. Cf. Restatement (Second) of Contracts § 236 comment a (1981) ("Even if the injured party sustains no pecuniary loss or is unable to show such loss with sufficient certainty, he has at least a claim for nominal damages").

The time at which Corroon committed a breach of its contract with Mobiles was when Corroon failed to procure an

insurance policy on behalf of Mobiles with NFI to insure such of Mobiles' vans as were garaged in Rhode Island. That occurred in 1977. Mobiles' argument that its right to bring an action did not "ripen" until June, 1986, when it was required to pay $50,000 is defeated by the rules applicable to breach of contract claims. Although an amount of damages may not be determined until after the time of the breach, if at all, the cause of action still accrues at the time of the breach. See *Boston Tow Boat Co.* v. *Medford Natl. Bank,* 232 Mass. at 40-42; *DiGregorio* v. *Commonwealth,* 10 Mass. App. Ct. at 862. Cf. Restatement (Second) of Contracts § 236 comment a. Under the general rule that a cause of action for breach of contract accrues at the time of the breach, Mobiles' claim would be barred because the action accrued in 1977, and it filed its complaint on September 25, 1987, well past the six-year statutory period of limitations under G. L. c. 260, § 2.

There are, however, situations in which a cause of action for breach of contract is not capable of being discovered because it is based on an "inherently unknowable" wrong. In those cases, the "discovery rule" tolls the accrual date of the statutory period until the injured party knows or should know the facts giving rise to the cause of action. *Frank Cooke, Inc.* v. *Hurwitz,* 10 Mass. App. Ct. at 106 (1980). The discovery rule has been applied in breach of contract claims in those cases involving the rendering of professional services where a client would not be expected to retrace the professional's steps nor be able necessarily to recognize the professional negligence should the client come across it. *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Engrs., Inc.,* 396 Mass. 818, 825 (1986). See *Frank Cooke, Inc.* v. *Hurwitz,* 10 Mass. App. Ct. at 107. The inherently unknowable wrong must be incapable of detection by the wronged party through the exercise of reasonable diligence. *Melrose Hous. Authy.* v. *New Hampshire Ins. Co.,* 24 Mass. App. Ct. 207, 212 (1987), *S.C.,* 402 Mass. 27 (1988). Even if the discovery rule were to be applied to these facts, Mobiles surely discovered the facts giving rise to a cause of action in breach of

contract when it received NFI's March 2, 1981, letter dis-
claiming coverage for the Rhode Island accident. Using the
discovery rule in calculating the appropriate accrual date for
the contract claim, rather than the general rule fixing the
accrual date at the time of the breach, the statutory period
of six years under G. L. c. 260, § 2, begins on March 2,
1981. As Mobiles filed its complaint on September 25, 1987,
its claim is barred by failing to file within the six-year pe-
riod. Summary judgment was properly granted in favor of
Corroon with respect to Mobiles' breach of contract claim.

Our resolution of the contract count is in dissonance[4] with
our earlier reflections about the unwisdom of stimulating pre-
mature legal actions, but settled doctrine about when con-
tract claims accrue dictates the distinction we have made.
The acceptance of contract actions founded on no more than
nominal damages grows out of the volitional nature of a con-
tract and a sense that what parties voluntarily and deliber-
ately agree to do is inherently entitled to the sanction of law.
The same value judgment does not pertain to a claim of neg-
ligence, based on accident without volition and, hence, not
worthy of the support of law unless there is more than nomi-
nal damage. To some degree, the difference in approach in a
contract action is mitigated by the longer statute of limita-
tions for contract actions. Here, for example, had the plain-
tiff initiated an action at once when the damages were known
(June, 1986), the action would have been timely.

---

[4]A different accrual date for the contract claim is also out of harmony
with the general desirability of having statutes of limitations apply equally,
irrespective of the form of the action, *Cannon* v. *Sears, Roebuck & Co.,*
374 Mass. at 743, but the alternatives of proceeding against a broker for
failure to place insurance as directed in tort or in contract are enshrined in
our cases. See *Rayden Engr. Corp.* v. *Church,* 337 Mass. 652, 659-660
(1958); *Rae* v. *Air-Speed, Inc.,* 386 Mass. at 192. Statutes limiting the
time for commencement of law suits have a far longer history than the
theory of the single action, and it is not astonishing that the idea of the
single action on occasion does not mesh with classic statutes of limitations.
When differences in a limitations period based on whether the claim is
expressed in contract or tort are particularly jarring, the Legislature has
made accommodations. For example, G. L. c. 260, § 2A, provides that
actions of contract to recover for personal injuries are subject to the same
three-year limitation period as actions of tort.

The judgment is vacated. A new judgment is to be entered dismissing the contract claim (count II) of the complaint. The remaining counts shall stand for further trial proceedings.

*So ordered.*