McHugh, J.
BACKGROUND
This is a civil action filed by John B. Giacalone (“Giacalone”) and Frank Perrone (“Perrone”), individually and as trustees of 415 Mystic Avenue Really Trust. Plaintiffs allege that they suffered damages as a result of a breach of contract and negligence by I.E.S., Inc. (“IES”) stemming from a site assessment report the latter issued. IES now has moved for summary judgment.
UNDISPUTED FACTS
The record, viewed as it must be in the light most favorable to Plaintiffs, establishes that in early 1989 Plaintiffs became interested in acquiring a piece of property located at 415 Mystic Avenue, Medford, Massachusetts (“the Property”). Plaintiffs at that time operated a business known as Avanti Corporation (“Avanti”), which sometimes acted as their agent for the acquisition of property.
On February 28, 1989, Giacalone signed a contract with IES to perform a pre-purchase environmental site assessment on the Property. The contract described the scope of the work IES was to perform in the following material terms:
*210 A. INITIAL SERVICES (Required)
1. Environmental Report Pursuant to M.G.L. Chapter 2 IE including historical research and site investigation. . .
B. ADDITIONAL SERVICES (may be required)
1. Test borings may be required if there is a potential hazard to the subsurface materials from an on-site or off-site source . . .
2. Laboratory testing will be performed if contaminants are discovered during subsurface drilling . . ,[1]
IES prepared the contract, a one-page document, and addressed it to Avanti, “Attention: Mr. Sal Querusio” at Avanti’s offices in Somerville. Giacalone signed the contract but his signature is not cabined by any qualifying words regarding whether or not he was acting in a representative capacity.
IES undertook the work the contract specified and sent a report to “Mr. Sal Querusio” at Avanti on March 29, 1999. Avanti paid IES for its services with Avanti checks dated February 27, 1989 and April 3, 1989.
In essence, IES’s report and cover letter concluded that the site did not “exhibit a release or threat of release pursuant to M.G.L.c. 21E.” In fact, the site contained buried hydraulic truck lifts and associated piping all of which contained hydraulic fluid. Although the lifts had been buried before IES conducted its inspection, the pipes leading to the lifts were still visible when IES performed its work. Nevertheless, the report and cover letter made no mention of either.
On April 14, 1989, about two weeks after IES rendered its report, Giacalone, Perrone, and Paul Pires (“Pires”),[2] executed the Declaration of Trust of 415 Mystic Avenue Realty Trust (“the Trust”). The Trust then purchased the Property, recording both the deed and the trust instrument on April 28, 1989.
On May 24, 1995, Plaintiffs and Pires, as trustees of the Trust, executed a purchase and sale agreement under which they agreed to sell the Property to two individuals. A provision of that agreement required the Trust to deliver to the buyers before the closing a Hazardous Waste Report that was satisfactory to the buyers’ mortgagee. To prepare that report, the Trust hired Kenyon Environmental, Inc. (“Kenyon”). On July 5, 1995, Kenyon issued an environmental site assessment that made no mention of the buried hydraulic truck lifts or of the oil-filled pipes leading to tire lifts.
In some fashion the record does not explicitly describe, the buyers’ prospective mortgagee, Century Bank (“Century”), became aware of the buried hydraulic truck lifts and allied piping. On August 28, 1995, Century informed the buyers that Century’s financing was conditioned on removal of all hazardous materials from the area of the hydraulic lifts and on a follow-up environmental site inspection. On September 19, 1995, Kenyon prepared and sent Century a report in which Kenyon concluded that “there has not been a significant release of contaminants into the subsurface of the Site from [the lift or associated machinery]. [Kenyon] does not recommend any further investigation at this time.” Nevertheless, on September 27, 1995, Century informed the prospective buyers that it would not provide financing for the purchase without an additional site assessment. On October 3, 1995, the buyers, exercising a power the purchase and sale agreement gave them, terminated the purchase and sale agreement because of Century’s dissatisfaction with the conditions disclosed in Kenyon’s report.
On April 1, 1997, Plaintiffs’ attorney, stating that he represented Avanti, mailed a written claim for damages purportedly arising out of the foregoing events to IES.[3] IES rejected the claim and this action followed. Avanti is not a party to this action and has not brought suit against IES for any claim relating to this matter or for any other matter.
APPLICABLE LAW
Until fairly recently, the principles governing summary judgment in Massachusetts were those the Supreme Judicial Court had articulated in Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Under those principles,
[t]he party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he [or she] would have no burden on an issue if the case were to go to trial... If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment. (Footnote omitted.)
In the recent case of Kourouvacilis v. General Motors Corp., 410 Mass. 706 (1991), however, the Court embraced the principles set forth by the Supreme Court of the United States in Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Under those principles,
a party who moves for summary judgment has the burden of initially showing that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial. [4] That burden is not sustained by the mere filing of the summary judgment motion or by the filing of a motion together with a statement that the other party has produced no evidence that would prove a particular necessary element of this case. The motion must be supported by one or more of the materials listed in rule 56(c) and, although that supporting material need not negate, that is, disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest, it must demonstrate that proof of that element at trial is unlikely to be forthcoming.
Kourouvacilis, supra, 410 Mass. at 714. As a consequence, there are now two ways in which the party moving for summary judgment may meet the burden *211 imposed by Mass.R.Civ.P. 56. The first of those follows traditional Massachusetts law:
[T]he moving party may submit affirmative evidence that negates an essential element of the nonmoving parly’s claim.
Kourouvacilis, supra, 410 Mass. at 715 quoting Celotex Corp. v. Catrett, supra, 477 U.S. at 331-32 (Brennan, J., dissenting). Second, however,
the moving parly may demonstrate to the court that the nonmoving party’s evidence is insufficient to establish an essential element of the nonmoving party’s claim ... If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law . . . Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient . . . Such a “burden” of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment... Rather,... a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.

Id.

Put another way,
a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he [or she] demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.
Kourouvacilis, supra, 410 Mass. at 716.
In applying that standard,
[w]here a moving party properly asserts that there is no genuine issue of material fact, “the judge must ask himself [or herself] not whether he [or she] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A judge’s mere belief that the movant is more likely to prevail at trial is not a sufficient basis for granting summary judgment.
Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Those, then, are the principles the Court must apply to the motions defendants have filed here.
DISCUSSION
IES bases its motion on four separate grounds, i.e., that Plaintiffs’ claims are barred by the statute of limitations,[5] that Plaintiffs were not parties to the contract between Avanti and IES and therefore have no right to seek damages for any breach of that contract, that, as a matter of law, the law reveals no breach of contract and that, even if there were a breach, the damages claimed by Plaintiffs are unrelated to that breach.
A. STATUTE OF LIMITATIONS
This action was commenced on September 8, 1997. The statutes of limitations for contracts and actions of tort are six years and three years, respectively. G.L.c. 260, §§2, 2A. Ordinarily, of course, “[a] cause of action for breach of contract accrues at the time of the breach.” Int’l Mobiles Corp. v. Corroon & Black, Fairfield & Ellis, Inc., 29 Mass.App.Ct. 215, 221-22 (1990). But the so-called discovery rule can toll the running of a statute of limitations in
situations in which a cause of action for breach of contract is not capable of being discovered because it is based on an “inherently unknowable” wrong. In those cases, the “discovery rule” tolls the accrual date of the statutory period until the injured party knows or should know the facts giving rise to the cause of action . . . The discovery rule has been applied in breach of contract claims in those cases involving the rendering of professional services where a client would not be expected to retrace the professional’s steps nor be able necessarily to recognize the professional’s negligence should the client come across it... The inherently unknowable wrong must be incapable of detection by the wronged party through the exercise of reasonable diligence.
Id. at 222. See also Anthony’s Pier Four v. Crandall Dry Dock Engr., Inc., 396 Mass. 818, 824-25 (1986); Melrose Housing Authority v. New Hampshire Ins. Co., 24 Mass.App.Ct. 207, 211-12 (1987).
Plaintiffs are not experts in environmental site investigation. They retained IES because they believed IES was qualified to perform an environmental site investigation. Plaintiffs admit that the pipes leading to the hydraulic lift area were visible on the property and that they probably saw those pipes in the period 1989-95. But IES proffers no reason why plaintiffs should have paid any particular attention to the pipes especially in light of the fact that IES had given the property a clean bill of health. In that regard, the term “reasonable diligence” as used in the Int’l Mobiles decision refers not just to the discovery of a problem but to the appreciation of a wrong: “Since the client is usually not an expert, he [or she] cannot reasonably be expected to recognize professional negligence or contract deviations.” Id. at 214-15. On this record, therefore, there is a genuine issue of material fact as to whether plaintiffs discovered, or in the exercise of reasonable diligence should have discovered, that they may have been harmed by IES earlier than September of 1991.
B. RIGHTS UNDER THE CONTRACT
Second, IES claims that even if it breached the contract and/or was negligent, and even if there is a causal connection between its conduct and Plaintiffs’ damages, *212 IES is not liable to any of the plaintiffs in this case. IES claims that it entered into a contract with Avanti, not Giacalone, Perrone, or the 415 Mystic Avenue Realty Trust. IES claims that it could not have entered into a contract with the Trust, or with an agent acting on behalf of the Trust, because the Trust had not been created either at the time the contract was entered or at the time IES submitted its report. On the present record, however, there is a genuine issue of material fact as to whether Avanti was acting as an agent for Giacalone and Perrone in connection with the Property’s acquisition and activities preliminary thereto. If it was, then, of course, Plaintiffs have a right to seek damages for breach of a contract their agent made with IES on their behalf.
C. BREACH OF CONTRACT
IES claims that the present record shows without dispute that it fully performed its responsibilities under the contract because there is no evidence that there was, or had been, a “release” on the property and there was no “threat of release” at the time it delivered its report in March of 1989. A “release” is defined in G.L.c. 2 IE, §2 as “any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment . . .” The same section defines a “threat of release” as “a substantial likelihood of a release which requires action to prevent or mitigate damage to the environment which may result from such release.”[6]
IES has proffered affidavits from three licensed site professionals who have opined that the mere existence of hydraulic canisters buried underground and encased in concrete, as they were at the Property, does not constitute a threat of release as that term is defined in G.L.c. 21E, §2 and in the Massachusetts Contingency Plan, 310 C.M.R. §40, et seq. IES also observes that Kenyon’s two reports likewise concluded that the property did not exhibit a release or threat of release and the record establishes that IES found no release or threat of such on the Property.
All of that is sufficient to place on plaintiffs the burden of demonstrating the existence of some genuine issue of material fact regarding either a release or a threat of release that existed on the property in March of 1989 when IES rendered its report. In an effort to meet that burden, plaintiffs point to the testimony of IES employee Daniel Jaffe who testified in his deposition, in essence, that pipes on property or other sources of underground contaminants potentially could create a “threat of release.” The question here, however, is not whether there were “potential” “threats of release” on the property. The question is not whether a lender was prepared to lend money to a buyer who wanted to buy the property in the condition it was when plaintiffs bought it in 1989. The question instead is whether there was on the property in March of 1989 when IES rendered its report a “threat of release” as that term is defined in G.L.c. 2 IE, §2. Proof that there was requires proof both that there was “a substantial likelihood of a release” and that “substantial likelihood” was one “which requires action to prevent or mitigate damage to the environment which may result from such release.” In light of the materials IES has filed, the present record is insufficient to create a genuine issue of material fact with respect to either issue.
D. CONNECTION BETWEEN BREACH AND DAMAGE
Finally, IES claims that Plaintiffs have proffered no evidence of a causal connection between IES’s alleged breach of contract and/or negligence and the damages plaintiffs allege. See, e.g., Soares v. Lakeville Baseball Camp, Inc., 369 Mass. 974, 974 (1976). See also Home Ins. Co. v. Columbia Ins. Agency, Inc., 5 Mass.App.Ct. 621, 622 (1977). Suffice it to say that there are substantial problems with several components of the damages Plaintiffs claim. It is difficult, for example, to understand why IES’s alleged failure to discover an alleged threat of release entitles plaintiffs to recover cleanup costs Plaintiffs would have been required to spend if the discovery had, in fact, been made. Some damages, however, would clearly be recoverable were this case to proceed to trial.
ORDER
In light of the foregoing, it is hereby ORDERED that Defendant’s Motion for Summary Judgment should be, and it hereby is ALLOWED. Judgment will enter dismissing the complaint.

 The parties agree that IES’s material duties and obligations under the contract were to locate and report on “releases" and “threats of release” as those terms are defined in G.L.c. 21E. See p. 10, infra.

 Pires apparently is no longer a trustee of the 415 Mystic Avenue Realty Trust.

 Plaintiffs claim to have suffered $690,900 in damages: $12,000 in out-of-pocket clean-up expenses, $7,240 in Level II testing expenses, $127,660 in vacancy loss, $4,000 in insurance expenses and the purchase price of $540,000. Plaintiffs sold the Property on June 16, 1998 for $580,500, $40,500 more than the sale price contained in the original agreement. I make no assessment of or judgment about the viability of any or all of plaintiffs’ damage claims.

 Kourouvacilis did not change the proposition that the moving party must show the absence of any genuine issue of material fact before the nonmoving party will be required to file any affidavit-based response of any kind. Smith v. Massimiano, 414 Mass. 81, 85-86 (1993).

 IES previously filed a motion to dismiss based upon the statute of limitations. In ruling on the motion on February 9, 1998, this Court provided IES with a stay of proceedings, limited discovery during that stay to matters pertaining to the statute of limitations and gave IES the opportunity to file a motion for summary judgment based upon a statute of limitations by April 3, 1998. IES filed no such motion and Plaintiffs claim that its opportunity to do thus was lost forever. Not so. The February 9 Order was permissive and designed to afford the parties an opportunity for a quick and relatively inexpensive exit from litigation that, as a matter of law could not succeed. The Order was not mandatory.

 The parties agree that the statutory definitions define the scope of IES’s work under the contract.