ANAHID KHATCHATOURIAN & another[1] vs. ENCOMPASS INSUR-
ANCE COMPANY OF MASSACHUSETTS[2]; JOHN AFTANDILIAN
& another,[3] third-party defendants.

No. 09-P-1061.

Middlesex. February 4, 2010. - October 14, 2010.

Present: CYPHER, BROWN, & RUBIN, JJ.

*Limitations, Statute of. Negligence,* Insurance agent, In obtaining insurance
policy. *Motor Vehicle,* Insurance. *Insurance,* Motor vehicle insurance,
Uninsured motorist, Agent's negligence. *Contract,* Insurance, Reformation,
Loan.

In a civil action brought by victims of a motor vehicle accident (plaintiffs)
against their primary insurer (defendant) for, inter alia, the negligence of
its agent in procuring an insufficient uninsured motorist policy, the judge
did not err in granting summary judgment in favor of the defendant, where
the plaintiff's claim was brought more than three years after the plaintiffs
suffered appreciable harm (i.e., after they incurred substantial medical
expenses), and more than three years after the latest date on which the
plaintiffs knew or should have known that the agent's conduct had caused
them harm, i.e., the date on which the gap in their coverage was confirmed
in writing. [57-60]

In a civil action brought by victims of a motor vehicle accident (plaintiffs)
against their primary insurer (defendant), in which the plaintiffs sought, inter
alia, equitable reformation of their insurance contract due to mutual mistake,
the judge erred in granting summary judgment in favor of the defendant,
where a standard loan receipt agreement between the plaintiffs and the
defendant's errors and omissions insurer did not effect a settlement in full
satisfaction of the claim and did not, therefore, render the case moot. [60-61]

CIVIL ACTION commenced in the Superior Court Department on
April 6, 2005.

The case was heard by *Herman J. Smith, Jr.,* J., on motions
for summary judgment.

*Andre A. Sansoucy* for the plaintiffs.
*Michael P. Johnson* for the defendants.

[1] Edwart Khatchatourian.
[2] Formerly known as Boston Old Colony Insurance Company.
[3] Concord Insurance Group, Inc.

RUBIN, J. The plaintiffs are victims of a serious motor vehicle accident suing their primary insurer for the negligence of its agent in procuring an insufficient uninsured motorist policy, and for reformation of the insurance contract based upon a mutual mistake. The insurer, Encompass Insurance Company of Massachusetts (Encompass), has impleaded both its agent, Concord Insurance Group, Inc. (Concord), and the individual broker who procured the policy, Concord's owner, John Aftandilian, with claims for indemnification and contribution. On the cross motions of all parties for summary judgment, a judge of the Superior Court entered judgment in favor of the defendant on the plaintiffs' claims for negligence and reformation. He denied the remaining motions. The judge concluded, first, that the statute of limitations governing the plaintiffs' negligence claim had expired; and, second, that a loan agreement between the plaintiffs and the insurer of the third-party defendants had effected a settlement, rendering the plaintiffs' reformation claim moot. We agree that the limitations period on the plaintiffs' negligence claim has run, and affirm the judgment in favor of the defendant on that claim. Because the loan agreement was not a settlement, however, we reverse the grant of summary judgment in favor of the defendant on the plaintiffs' claim for reformation.

1. *Background.* The following facts are taken from the summary judgment record. On July 25, 2001, Anahid Khatchatourian was involved in a serious motor vehicle accident, in which her vehicle was struck from behind and pushed into a safety barrier. The driver at fault fled the scene. As a result of the accident, Anahid suffered severe injuries, incurred substantial medical expenses, and remains permanently disabled.

At the time of the accident, Anahid and her husband Edwart Khatchatourian carried their primary automobile insurance with Encompass. The Khatchatourians also held an umbrella insurance policy with United States Liability Insurance Company (USLIC), which insured against certain losses in excess of the primary policy's limits. Both policies had been procured for the Khatchatourians by their long-time insurance broker, John Aftandilian, the owner of Concord, an authorized agent of Encompass. Through Aftandilian, the Khatchatourians had maintained their primary uninsured motorist policy with Encompass, including a $50,000 per person coverage limit, for three years

beginning in 1998. For two of those years, Aftandilian had also procured for the Khatchatourians an umbrella policy that insured against losses in excess of $50,000. In 2000, however, Aftandilian procured the USLIC policy. That policy provided for $1,250,000 in coverage, but only for those damages in excess of $250,000. It is undisputed that both Aftandilian and the Khatchatourians intended that the Khatchatourians would continue to have seamless coverage between their primary uninsured motorist policy and their umbrella policy. It is also undisputed that Aftandilian was, at the time, authorized by Encompass to increase the Khatchatourians' policy limits, and would have done so had he been aware of the higher threshold in the USLIC policy. Unbeknownst to the Khatchatourians, however, the two policies as written left a $200,000 "gap" in coverage for losses between $50,000 and $250,000.

On September 12, 2001, the Khatchatourians submitted claims for payment of uninsured motorist benefits under the Encompass policy and the USLIC umbrella policy. Encompass agreed to pay the Khatchatourians the full $50,000 available under the written terms of its policy, and the Khatchatourians signed a release and trust agreement settling that claim on December 14, 2001.[4] A December 5, 2001, letter to USLIC from the Khatchatourians' attorney reveals, however, that, as of that date, USLIC had neither confirmed its coverage of the Khatchatourians in writing, as requested, nor reached a final coverage determination. In a follow-up letter dated December 13, 2001, the Khatchatourians demanded written responses to several questions, including whether the Khatchatourians held a policy with USLIC, whether that policy contained $1,000,000 of uninsured motorist coverage, and whether there existed a "gap" in coverage for the loss.

On February 14, 2002, the Khatchatourians sent a letter to Aftandilian relaying representations made by USLIC's attorney that the Khatchatourians had a $200,000 gap in their insurance coverage, and stating, "If there is a gap in coverage and/or a valid reservation of rights, it is as a result of your carelessness

___

[4]That agreement released Encompass from any further claims stemming from this accident against the uninsured motorist coverage afforded by the Khatchatourians' insurance policy. It does not affect the Khatchatourians' ability to maintain the current suit against Encompass for its agent's negligence, or for reformation of the insurance contract.

and negligence."[5] In that letter, they also advised Aftandilian to notify his errors and omissions insurer of the potential claim. On February 28, 2002, USLIC confirmed the terms of the Khatchatourians' umbrella policy in writing, informing the Khatchatourians that their policy provided for $1,250,000 in uninsured motorist coverage, but only for those damages in excess of $250,000.[6] Thus, rather than the seamless insurance coverage that the Khatchatourians believed they had purchased, the Khatchatourians were faced with a $200,000 gap between the upper limit of the Encompass policy and the coverage threshold of the USLIC policy.

On November 24, 2003, the Khatchatourians' claim against USLIC was resolved through binding arbitration. The arbitrator concluded that Anahid bore no fault for the accident, and determined the Khatchatourians' damages to be $1,375,000. USLIC paid the Khatchatourians $1,125,000. On March 22, 2004, the Khatchatourians entered into a loan agreement with Utica Insurance Company (Utica), Concord's errors and omissions insurer. According to the written memorialization of the agreement, entitled "Loan Receipt, Assignment of Rights, and Covenant Not to Sue," the Khatchatourians promised not to sue Concord; authorized Concord and Utica to initiate this suit against Encompass in the Khatchatourians' name; and promised to cooperate with Concord and Utica in this suit, including participating in discovery and testifying at trial. In exchange, Utica loaned the Khatchatourians $200,000 (an amount equal to the gap in their insurance coverage) to be repaid, without interest, from any sums awarded to the Khatchatourians as a result of any legal action against Encompass. Pursuant to the above agreement, the Khatchatourians filed this suit on April 6, 2005.

2. *Discussion.* This court reviews a grant of summary judgment de novo. *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007). We

---

[5]In his deposition, Aftandilian asserted that he procured the USLIC umbrella policy under the mistaken belief that it would "kick in" as soon as the $50,000 Encompass policy was exhausted.

[6]In fact, the Khatchatourians' policy with USLIC required an underlying primary policy with uninsured motorist coverage limits of at least $250,000 per person, per accident. However, USLIC explained to the Khatchatourians that it would not require them to "physically 'recover damages' against another party" as a condition to payment under the policy.

will affirm the entry of judgment only if, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

a. *Statute of limitations.* The Khatchatourians' negligence claim is governed by the three-year limitations period for tort claims contained in G. L. c. 260, § 2A, amended by St. 1973, c. 777, § 1. By its terms, that limitations period does not begin running until a plaintiff's "cause of action accrues." *Ibid.* Under our discovery rule, a cause of action for negligence accrues when "a plaintiff knows or reasonably should know that it has sustained appreciable harm as a result of a defendant's negligence." *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 268 (1985). Accrual of a cause of action thus has two essential prerequisites: harm, and "an event or events . . . that were reasonably likely to put the plaintiff on notice that someone may have caused her injury." *Donovan* v. *Philip Morris USA, Inc.*, 455 Mass. 215, 228 (2009), quoting from *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 207 (1990). What a plaintiff knew or should have known is a question of fact that is often unsuited for summary judgment. See *Szymanski* v. *Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 370 (2002). However, "when the facts regarding discovery of harm are undisputed, the question may be decided as matter of law." *Vinci* v. *Byers*, 65 Mass. App. Ct. 135, 139 (2005).

The Khatchatourians have alleged that Aftandilian was negligent in failing to increase the uninsured motorist coverage on their primary policy with Encompass to $250,000 per person, so as to provide the seamless coverage they desired. It is clear that, if Aftandilian's failure was negligent, it resulted in appreciable harm to the Khatchatourians no later than November 5, 2001. The summary judgment record demonstrates that, by that date, the Khatchatourians had incurred more than $150,000 in medical expenses, well exceeding the benefits available under their primary policy. The Khatchatourians thus suffered a quantifiable, unprotected loss, for which they would have been insured under the coverage that they allege Aftandilian, acting on behalf

of Concord, Encompass's agent, should have procured. See *ibid.*, quoting from *Kennedy* v. *Goffstein*, 62 Mass. App. Ct. 230, 233 (2004) ("At its root meaning, appreciable harm is 'injury, loss or detriment' that is capable of being measured or perceived").

The Khatchatourians contend by contrast that, under the principle articulated by the court in *International Mobiles Corp.* v. *Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 217-220 (1990), they were not harmed until November 24, 2003, when the arbitrator issued an award on their claim against USLIC. They argue that, prior to that award, both their own fault for the accident and the extent of their compensable injury remained unadjudicated, and thus "the gap in coverage had not necessarily caused them any financial harm." But *International Mobiles* did not hold, as the Khatchatourians seem to assert, that a negligence claim against an insurer or broker is essentially tolled until every fact necessary to prove that the plaintiff suffered an otherwise-compensable loss is litigated in a separate proceeding (in this case, without that insurer's participation). The Khatchatourians' reliance on that decision is therefore misplaced.

*International Mobiles* addressed the timeliness of a plaintiff's negligence claim against its insurance broker for the broker's failure to procure requested liability insurance. This court held that the plaintiff's cause of action did not accrue until the plaintiff had reached a settlement agreement in its defense of the lawsuit for the underlying accident. *Id.* at 220. We explained that, until the settlement agreement established the plaintiff's liability to the accident victim in excess of its insurance coverage, the plaintiff had neither incurred an out-of-pocket expense (the insurer bore the cost of its trial defense) nor "suffered any discernible detriment as a result of [its broker's] negligence." *Id.* at 219-220. We emphasized, however, that the case turned on the "relatively peculiar circumstance" that the plaintiff had incurred no expense, and that, as a general rule, legal injury requires only some "appreciable harm." *Id.* at 219-220. As an example, we pointed to decisions from other jurisdictions that construed "legal injury" in the insurance context to require that "the insured actually suffers the unprotected loss." *Id.* at 219. *International Mobiles* thus stands for the proposition that mere

"consciousness of contingent liability" is an insufficient injury for triggering the running of a statute of limitations. *Ibid.*

Here, prior to the arbitration decision, the Khatchatourians had suffered more than a theoretical injury. As the victims of a hit and run driver, the Khatchatourians had incurred substantial medical expenses, expenses against which they would have been insured under the coverage that they allege Aftandilian should have written. This is an appreciable harm sufficient for a claim of negligence to accrue.

To be sure, as described above, our law also requires that a plaintiff has discovered, or that he or she reasonably should have discovered, that the harm suffered was a result of the defendant's conduct. *Bowen* v. *Eli Lilly & Co.*, 408 Mass. at 205. The record evidence reveals that both the Khatchatourians and Aftandilian mistakenly believed that the USLIC umbrella policy insured against all losses in excess of $50,000 per person. Accordingly, the Khatchatourians might not have discovered that they were harmed by the insufficiency of their insurance until they became aware of the gap in coverage between the Encompass and the USLIC policies. Mindful that we are reviewing a grant of summary judgment, and that we may make a legal determination only on undisputed facts regarding the discovery of harm, *Vinci* v. *Byers*, 65 Mass. App. Ct. at 139, we conclude that the latest date on which the Khatchatourians first knew or should have known that Aftandilian's conduct had caused them harm was February 28, 2002, the date on which USLIC confirmed the $250,000 primary policy requirement in writing. By that point, any doubt the Khatchatourians may have harbored about the terms of their coverage would have been extinguished or rendered unreasonable, and they would have or reasonably should have known that Aftandilian had not obtained seamless coverage for them.[7]

As the Khatchatourians' negligence claim was brought more than three years after February 28, 2002, it is untimely. We

[7]We note that the Khatchatourians do not argue that they only discovered through the arbitration proceeding that USLIC was not obligated to pay for the "gap" in coverage at issue here. That proceeding did not adjudicate the scope of the USLIC policy, only the question of Anahid's fault and the extent of the Khatchatourians' damages. We express no opinion on whether such an argument would bring this case within the holding of *International Mobiles, supra.*

therefore affirm both the allowance of Encompass's motion for summary judgment and the denial of the Khatchatourians' motion for summary judgment on that claim.

b. *Reformation.* The Khatchatourians also sought equitable reformation of their insurance contract with Encompass under a theory of mutual mistake.[8] The judge allowed Encompass's motion for summary judgment on this claim without considering the merits, concluding that the loan agreement between the Khatchatourians and Utica effected a settlement in full satisfaction of the claim, and that the case was therefore moot.

For aught that appears, the agreement is a relatively standard loan receipt agreement. It was settled over forty years ago in *Crocker* v. *New England Power Co.,* 348 Mass. 159, 161-162 (1964), in which the Supreme Judicial Court approved the use of such agreements, that they do not render a plaintiff's claims moot by satisfying them in full. There, as here, a potential plaintiff received a loan from the insurer of a party exposed to possible tort liability. *Id.* at 161. There, as here, the loan was made without interest, and repayable only out of proceeds of any legal recovery against a third party. *Ibid.* That agreement also appointed the insurer as the plaintiff's attorney in fact, "with sole and irrevocable power to conduct any and all legal proceedings in connection with the accident at [the insurer's] sole expense." *Ibid.* Rejecting the defendant's claim that the agreement satisfied the plaintiff's claim in full, the *Crocker* court noted the desirability of such agreements, stating, "The injured plaintiff, who is allowed funds while his claim is litigated, is saved from becoming a victim of the law's delays." *Ibid.*

The conclusion of the judge that the loan agreement rendered this case moot is explicable given that, remarkably, neither party cited *Crocker* before him or, indeed, before us. Nonetheless, that longstanding precedent controls the legal question presented by the parties. See *Mahoney* v. *DeMatteo-Flatiron LLP,* 66 Mass. App. Ct. 903, 904 (2006) ("the plaintiff's failure in the first [or second] instance to marshal all available authority in support of [his] argument does not waive the central effect of his contention"). Because, under *Crocker,* the instant

---

[8]The defendant does not contend that this claim is barred by the statute of limitations.

agreement did not effect a settlement, summary judgment in favor of Encompass on the ground of mootness should not have been granted.

Encompass argues, alternatively, that the grant of summary judgment in its favor should be affirmed because the record reveals no genuine issue of material fact with respect to whether the Encompass policy was the product of a mutual mistake. The Khatchatourians have also appealed the denial of their motion for summary judgment on that claim, and request us to order an entry of judgment in their favor. In light of his conclusion that this case was moot, the judge did not reach the merits of these arguments. While we have the authority to address them, in the circumstances of this case we conclude that prudence dictates that we allow the judge to do so in the first instance. Cf. *Middleborough* v. *Middleborough Gas & Elec. Dept.*, 422 Mass. 583, 588-589 (1996).

The judgment is affirmed in part and vacated in part, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*