Lauriat, Peter M., J.
These related actions arise out of a failed business relationship between plaintiff/attorney Nicolas Kensington (“Kensington”) and defendant Leopoldo Johnson (“Johnson”). The matters are before the court on the defendants’ motion to dismiss Counts III, IV, V, VT and VII of the complaint in Civil Action No. 10-2668-BLS1, and Rich May’s motion to dismiss the complaint in Civil Action No. 10-3622-BLS1. For the following reasons, the defendants’ motion to dismiss in Civil Action No. 10-2668-BLS1 is allowed in part and denied in part, and Rich May’s motion to dismiss in Civil Action No. 10-3622-BLS1 is denied.
BACKGROUND
The court takes the following facts from the parties’ complaints. C.L.H. Inc. (“C.L.H.”) is a Delaware corporation; defendant C.L. Hauthaway & Sons Corp. (“Hauthaway”) is a Massachusetts corporation. Both C.L.H. and Hauthaway (collectively “the Hauthaway companies”) are closely held corporations. Johnson is a majority owner of C.L.H. and an officer and director of the Hauthaway companies. Defendant Theodore Johnson (“Ted Johnson”), Johnson’s son, is Executive Vice President of C.L.H. and Hauthaway and serves on their boards of directors. The court will refer to Johnson, Ted Johnson, C.L.H. and Hauthaway collectively as the Hauthaway parties. Kensington, an attorney, is a *329 shareholder and Managing Director of the law firm Rich May, P.C. (“Rich May”), the defendant in Civil Action No. 10-3622-BLS1.
In the early 1980s, Kensington began representing Johnson and his business partner, William G. Watson (“Watson”) in connection with their acquisition of all the shares of Hauthaway, which in 1984 became a wholly owned subsidiary of the newly formed C.L.H. For the next three decades, Kensington and Rich May advised Johnson and the Hauthaway companies on various corporate, taxation, litigation, employment and environmental matters. Kensington and Rich May also assisted Johnson in creating the Leopoldo A. Johnson Irrevocable Trust Agreement (“the Trust”), an inter-vivos trust with Johnson’s wife, Cecile, and Ken-sington as co-trustees, that was created for the benefit of Cecile and Johnson’s issue, including Ted Johnson. Of note, the Trust granted Kensington broad discretionary powers, and provided that, although he could resign as trustee, no other party had the power to remove him.
During the 1980s and 1990s, Johnson and Watson repeatedly asked Kensington to serve on the boards of directors of the Hauthaway companies. Kensington maintains that he declined those invitations out of concern for any potential conflict of interest. In 1994, however, Kensington agreed to join the boards with, he asserts, the understanding that he would receive shares in the Hauthaway companies. Kensington was to be paid $1500 for every directors’ meeting that he attended. He and Rich May continued to provide and be compensated for legal services. Kensington asserts that he did not bill for time spent at directors’ meetings or on business matters related to those meetings.
Relevant to the motions before the court is Article VII, Section 7(a) of the C.L.H. by-laws, which provides that:
[t]he corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding ... by reason of the fact that he or she is or was a director ... or is or was serving at the request of the corporation as a director . . . against expenses (including attorneys fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him or her in connection with such action, suit or proceeding if he or she acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the corporation . . .
Article VII, Section 7(d) states that:
[a]ny indemnification . . . (unless ordered by a court) shall be made by the corporation only as authorized in the specific case upon a determination that indemnification of the director ... is proper in the circumstances because he or she has met the applicable standard of conduct set forth in such paragraphs (a) . . .
Although the parties present decidedly different versions of the process,[1] it is not disputed that at the December 4, 1997, director/shareholder meeting, the relevant directors, officers and shareholders approved a stock option agreement (“the Option Agreement” or “the Agreement”), drafted by Kensington and Rich May, granting Kensington the right to buy nine shares of common stock of C.L.H. for one dollar per share.[2] The options vested over four years and expired on July 31, 2007. Section 2 of the Agreement provides that “CLH shall proceed with reasonable promptness to issue the shares so purchased upon such exercise of the Stock Option . . .” Section 5 of the Option Agreement provides that:
Optionee shall have no rights as a stockholder with respect to the Common Stock covered by this Stock Option until the date of the issuance of a stock certificate or stock certificates to him.
Upon the execution of the documents, Kensington told Johnson that he would voluntarily forego his $1,500 director’s fee.[3] At no time subsequent to the execution of the Option Agreement did the defendants contest its validity. To the contrary, according to Kensington’s complaint, financial statements and capitalization tables of the Hauthaway companies acknowledged the existence and validity of the Agreement.
The relationship between Kensington and the Johnsons began to deteriorate sometime in 2005 and 2006. The Hauthaway parties take the position that Kensington was reluctant to accept the emerging role of Ted Johnson in the day-to-day management of the companies, and preferred to communicate only with Johnson. Legal bills from Rich May, according to the Hauthaway complaint, were late and did not contain a full description of services performed.
By letter dated June 6, 2007, with an enclosed check for $9.00, Kensington sought to exercise his options. According to the Hauthaway parties’ complaint, Ted Johnson and other executives had become concerned that Kensington’s conduct revealed a conflict of interest with respect to his roles as director, legal advisor, trustee and putative shareholder; they thus “sought the assistance of outside counsel in evaluating the appropriateness of the transactions Kensington had orchestrated between himself and the Companies.” Complaint, para. 46. Kensington responded by email dated June 21, 2007, that he often found himself in situations where there could be potential conflicts of interest, but that he was often better able to advise clients from “multiple positions of Trust.” Complaint, para. 47.
*330 The Hauthaway parties then proposed to buy out Kensington’s options. Kensington asserts that he agreed to the request provided there was a prompt valuation of the shares and that the transaction conclude within a month or two. On January 27, 2009,[4] over nineteen months later, the Hauthaway companies offered $80,000 for his options, dramatically lower, he contends, than their objective value. He rejected the offer. In the interim, he received no dividends as had been distributed to other shareholders, and no offer to pay interest on the amount resulting from the delay. The Hauthaway parties, for their part, argue that Kensington undertook “a campaign to drive an artificially high valuation of C.L.H., thus increasing the likelihood of a more substantial buyout of his options” in disregard of the impact this would have on Johnson’s estate planning and C.L.H.’s operating income, cash flow and liquidity.[5]
On July 22, 2009, the Hauthaway companies informed Kensington that the options were invalid. Kensington sent a Notice of Default and demand to the Hauthaway companies by email dated August 17, 2009, and by letter dated August 18, 2009. He asserts in his complaint that Johnson telephoned him on August 19, 2009, pledging to resolve the situation. At no time did C.L.H. issue any stock certificates to Kensington. On July 1, 2010, Ken-sington filed his complaint (the “Option Action”).[6] He claims, in essence, that the Hauthaway defendants breached several contractual duties; he seeks specific performance as well as fees and costs. On August 21, 2010, the Hauthaway companies informed Kensington that he had been removed as a director one month previously. On August 23, 2010, the Hauthaway parties filed their answer and counterclaim, asserting that Kensington breached his fiduciary duly both as attorney to the Hauthaway companies, and as trustee of the Trust; they sought Kensington’s removal as trustee.
Meanwhile, Johnson sought to exchange the term life insurance policy component of the Trust for a policy of permanent life insurance; this action had to be accomplished by July 23, 2010. Because the Trust owned the policy, only the trustees of the Trust could effect that exchange. Johnson’s insurance advisor told him that Kensington did not want to participate in the conversion and wished to resign as trustee. Johnson’s new counsel sent Kensington a letter dated June 17, 2010, enclosing a form by which Kensington could resign. Kensington replied by email dated June 25, 2010, that he was amenable to the idea pending “a review of what actions are appropriate with respect to my status as a Trustee of the Trust.” Although on July 2, 2010, Kensington sent the Johnsons directly the documentation required for the insurance exchange, he again stated that he was reviewing whether it was appropriate to continue as a trustee. He continued to refuse to resign as trustee, and the Hauthaway parties filed their action on September 13, 2010.[7],[8] Kensington has now moved to amend his own complaint to add a claim for declaratory judgment.[9] Pursuant to Mass.R.Civ.P. 12(b)(6), the Hauthaway parties have moved to dismiss Counts III, IV, V, VI and VII of Kensington’s complaint. Finally, Rich May has moved to dismiss the Hauthaway parties’ complaint in its entirety. The court will address each motion in turn.
DISCUSSION
In order to withstand a motion to dismiss, a plaintiff s complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement . . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, a plaintiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006).
I. The Hauthaway Parties’ Motion to Dismiss Kensington’s Complaint[10]
Kensington asserts that Johnson and Ted Johnson maliciously and with ulterior motive tortiously interfered with his contractual relations with the Hauthaway companies and breached their fiduciary duties, where they caused the companies to breach the Options Agreement and offered to purchase his shares at a reduced price. He seeks indemnification for losses, including attorneys fees, in connection with this claim, as well as damages and the issuance and delivery of his nine shares of stock, together with all past dividends and interest.
The Hauthaway parties challenge Kensington’s complaint on four grounds: (1) Kensington’s claim for indemnification and advancement of attorneys fees must fail where it is brought to advance his individual interests; (2) because Johnson and Ted Johnson (“the individual defendants”) are indistinguishable from the Hauthaway companies, they cannot be liable for interfering with their own contract; (3) Kensington’s claim for breach of fiduciary duty fails where he is not a shareholder; and (4) the quantum meruit and unjust enrichment claim must be dismissed where Kensing-ton has a remedy at law.
A.
Kensington claims in Count III a right to indemnification and advancement under Section 7 of C.L.H.’s by-laws, quoted supra. To the extent that Kensington seeks advancement of fees, Section 7(e) provides that
*331 “(e)xpenses, (including attorneys fees) incurred by an officer or director in defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action ...” The unambiguous language therefore precludes advancement where Kensington is not “defending,” but rather is the plaintiff, in any proceeding. See 8 Del.Code.Ann., § 145(e); Gentile v. Singlepoint Fin. Inc., 788 A.2d 111, 113 (Del. 2001) (where language of by law clearly limited advancement to a “named defendant”); Baker v. Impact Holding, Inc., 2010 Del.Ch. LEXIS 166 (July 30, 2010) (where by-law permitted advancement of expenses incurred “in defending” a proceeding, to allow plaintiff advancement of costs would read that language out of the provision).[11]
As to indemnification, the Hauthaway parties contend that the by-laws limit their indemnification of costs incurred to those proceedings where the director is a defendant. They argue that because here Kensing-ton is asserting a personal claim that does not involve his duties to the corporation, Delaware law prohibits indemnification. See, e.g., Shearin v. E.F. Hutton Group, Inc., 652 A.2d 578, 594 (Del.Ch. 1994); Gentile v. Singlepoint Fin., Inc., 787 A.2d 102, 107 (Del.Ch. 2001). Kensington responds that Delaware statutoiy and case law do not require that the director be a defendant, but rather “if there is a nexus or causal relationship between any of the underlying proceedings . . . and one’s official corporate capacity, those proceedings are ‘by reason of the fact’ that one was a corporate officer, without regard to one’s motivation for engaging in that conduct.” Homestore, Inc. v. Tafeen, 888 A.2d 204, 214 (Del. 2005). Therefore, the argument goes, because the Option Agreement was a condition of his appointment as a director of the Hauthaway companies, there is a causal nexus between his claims of breach of that agreement and his corporate position.
The court notes that advancement and indemnification are correlative, but nonetheless discrete and independent rights, with advancement having the more limited scope. Kaung v. Cole Nat’l Corp., 884 A.2d 500, 509-10 (Del. 2005). Here, the by-laws specifically limit advancement to costs incurred in defending a claim. There is no such limiting language in the indemnification provision. Nonetheless, whether a corporate officer has a right to indemnification is a decision that of necessity must await the outcome of the litigation. Id. at 509. Kensington’s claim is thus premature. For that reason, Count III will be stayed until such time as Kensington’s claims are resolved on their merits.[12]
B.
With respect to Count IV, in order to sustain an action for intentional interference with contractual relations, Kensington must prove that he had a contract with a third party; that Johnson and Ted Johnson knowingly interfered with that contract; that the interference was not only intentional but improper in motive and means; and that the interference harmed Kensington. Harrison v. NetCentric Corp., 433 Mass. 465, 476 (2001). A party to a contract cannot be held liable for intentional interference with that contract. Id. at 477.
Kensington asserts that the individual defendants, intentionally and with malice, interfered with the Option Agreement, and caused the Hauthaway companies to fail to issue his shares upon his demand. The individual defendants assert that the companies are closely held corporations; Ted Johnson is the Executive Vice President and serves on the boards of directors of both companies, and Johnson is an officer and director of both companies and owns a majority of the common stock of C.L.H. Therefore, they argue, they are indistinguishable from the companies and, as parties to the contract, cannot be held liable.
This argument falls short of its mark.[13] The Hauthaway parties are correct that where the corporation and the individual defendants are indistinguishable, including where the individual is the sole stockholder, as the corporation’s alter ego, the defendants may not be liable in tort. See, e.g., Harrison, 433 Mass. at 478. However, the court is not persuaded that the facts in this case, at least as set forth at this veiy early stage of the proceedings, warrant such a conclusion.[14] There is no evidence that Johnson was the sole owner of the companies, and no evidence, other than the defendants’ assertions, that he, either individually or in concert with Ted Johnson, made key decisions regarding the companies. Furthermore, Ted Johnson, at least at that time, owned no shares of the companies. The court therefore does not consider the individual defendants to be indistinguishable from the companies. The court also concludes that, taking the assertions in the complaint as true, Kensington has met his burden of asserting sufficient facts to state a claim for intentional interference. He has alleged that, after he had agreed to allow the companies to purchase his shares, and after repeated reminders, emails and phone calls, some nineteen months passed before he received an offer. The court is hard pressed, absent any countervailing evidence, to consider this offer to have been made “with reasonable promptness” as provided in the Agreement. After Kensington refused the offer, the defendants informed him that the Option Agreement was invalid and, one month later, that he had been removed as director without his knowledge. Kensington alleges that Ted Johnson, who in the interim had become a director of the Hauthaway companies, stated many times previously that he no longer wanted Kensing-ton to be a shareholder, and that this motivated the individual defendants’ actions. Kensington claims *332 that their conduct in this regard was malicious and improper. This is sufficient to withstand the motion to dismiss Count IV.
C.
In Count V, Kensington asserts that the individual defendants breached their fiduciary duties by causing the Hauthaway companies to refuse to issue his shares, and by extending an offer to purchase far below the fair value of the shares. The defendants respond that, since Kensington does not have any stock certificates, he has no rights as a shareholder under the Option Agreement. The court agrees that under the unambiguous language of the Agreement, unless Kensington is in possession of the stock certificates, he cannot be considered a shareholder and thus cannot assert a claim of breach of fiduciaiy duty in that capacity.
Even if that was not the case, while there are no cases within this jurisdiction on point, the law elsewhere is clear that stock options do not give rise to a fiduciaiy duty. “The instrument stands alone, claiming no equity in the corporation, entitled to no vote, and with no fiduciaiy obligation of the management to the option holder’s interest.” Herbal Care Sys., Inc. v. Plaza, 2009 WL 692338 at *3 (D.Ariz. 2009) (quoting Starkman v. Warner Comm., Inc., 671 F.Sup. 297, 304 (S.D.N.Y. 1987)) (internal quotations omitted); McGoldrick v. Trueposition, Inc., 623 F.Sup.2d 619, 626 (E.D.Pa. 2009) (“Under Delaware law, courts have clearly stated that a fiduciary duty does not arise until there is an existing property right and that stock options of employees do not give rise to such an interest”); In re Cendant Corp. Sec. Litig., 76 F.Sup.2d 539, 550 (D.N.J. 1999) (“Holders of unexercised stock options merely have a contractual right to purchase an equitable interest in a corporation at some later date”); Simon v. Cogan, 549 A.2d 300, 304 (Del. 1988) (“a mere expectancy interest does not create a fiduciaiy relationship. Before a fiduciaiy duty arises, an existing property right or equitable interest supporting such a duty must exist.”); Gamble v. Penn Valley Crude Oil Corp., 104 A.2d 257, 260 (Del.Ch. 1954) (option to buy stock in the future does not make one an equitable stockholder).
That does not end the matter however. Counts I and II of the complaint, for breach of contractual duties against the Hauthaway companies, remain alive. Kensington seeks, inter alia, specific performance. Should a judgment enter in his favor directing C.L.H. to deliver to him nine shares of its common stock, he would then become a shareholder. In that event, Kensington would have standing to assert his claim for breach of fiduciary duly; hence any action is at this point is premature. Count v. will therefore be stayed pending resolution of Kensington’s contract-based claims.
D.
As to Counts VI and VII, for quantum meruit and unjust enrichment, Kensington has both tort and breach of contract claims which, if the Hauthaway defendants are held liable, will adequately compensate him for any losses. See, e.g., Fox v. F&J Gattozzi Corp., 41 Mass.App.Ct. 581, 589 (1996); see also MCI Worldcom Communications v. Department of Telecommunications, 442 Mass. 103, 116 (2004). Therefore Counts VI and VII must be dismissed.
II. Rich May’s Motion to Dismiss the Hauthaway Parties’ Complaint
The gist of the Hauthaway parties’ claim for breach of fiduciaiy duty is that Kensington engaged in self-dealing, that his Option Agreement was materially different than those issued to the other two executives and thus was unfair, and that Kensington made efforts to manipulate the valuation of C.L.H. to increase the value of his options. They argue that Rich May in its individual capacity and, in the alternative, on a theoiy of respondeat superior, failed to inform them of Kensington’s conduct and failed to advise them to seek separate counsel.[15]
Although captioned as claims for breach of fiduciary duty, Counts I and II might also be characterized as claims for legal malpractice. See, e.g., Restatement (Third) of The Law Governing Lawyers, §49 comment c (2000) (“[m]any claims brought by clients against lawyers can reasonably be classified either as for breach of fiduciaiy duty or for negligence without any difference in result”). Rich May moves to dismiss on the grounds that the claims are time barred and that the Hauthaway parties suffered no appreciable harm. The two are inextricably entwined. See Cantu v. The St. Paul Cos., 401 Mass. 53, 57 (1987) (cause of action accrues upon the coalescence of discoveiy and appreciable harm).
Pursuant to G.L.c. 260, §4, “(a)ctions of contract or tort for malpractice, error or mistake against attorneys . . . shall be commenced only within three years next after the cause of action accrues.” An action “accrues” when the plaintiff knows or reasonably should know that he or she has been harmed by the defendant’s conduct. Williams v. Ely, 423 Mass. 467, 473 (1996). Thus the statute of limitations begins to run when an injuiy is no longer “inherently unknowable,” and a reasonably prudent person in the plaintiffs position, reacting to any suspicious circumstances of which he might be aware, should have discovered the harm and its cause. Bowen v. Eli Lilly & Co., 408 Mass. 204, 206-08 (1990). “The plaintiff need not know the extent of the injuiy or know that the defendant was negligent for the cause of action to accrue . . . Once the client or former client knows or reasonably should know that he or she has sustained appreciable harm as a result of a lawyer’s conduct, the statute starts to run.” Williams, 423 Mass. at 473. Generally, the question of “whether a plaintiff in a particular position knew or should have known of the defendant’s wrongful conduct is for the fact *333 finder.” Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 377 (2008).
The Hauthaway parties filed this action on September 13, 2010. Therefore, in order to fall within the three-year statute of limitations, the underlying cause of action must have accrued after September 13,2007. Rich May takes the position that the Hauthaway parties knew or reasonably should have known that they had sustained appreciable harm in June 2007, when they consulted independent counsel out of concern regarding any conflict of interest arising from Kensington’s multiple roles. The appreciable harm, Rich May claims, is the attorneys fees incurred therefrom. The Hauthaway parties respond that the retention of independent counsel is insufficient to start the limitations period. They claim that their damages were the fees paid to Kensington and Rich May with respect to the Option Agreement, the creation and maintenance of the Trust, and Kensington’s work as a trustee. That these fees were unwarranted or unearned could not, they assert, be ascertained until later. The Hauthaway parties have the sounder argument.
While paragraph 46 of the complaint states that the Hauthaway parties retained outside counsel for the purpose of evaluating Kensington’s transactions, it is not clear if, at that point, they knew or should have known of any harm. To the extent that Rich May asserts that legal fees paid to outside counsel constituted harm, those were not incurred expressly to repair the harm caused by Kensington’s negligence. This case therefore does not fall within the rule articulated in Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple, P.C., 394 Mass. 265, 268 (1985), where the Supreme Judicial Court held that the statute of limitations begins to run when legal expenses are first incurred while defending a suit brought as a result of the defendant’s negligence. See also Pelletier v. Chouinard, 27 Mass.App.Ct. 92, 95 (1989) (legal expenses incurred to ameliorate harm caused by negligent attorney is appreciable harm); Frankston v. Denniston, 74 Mass.App.Ct. 366, 374-75 (2009) (“[appreciable harm encompasses the incurring of legal expenses, such as litigation-related expenses in defending against, or advancing, an issue that is central to the alleged legal malpractice”). Here, at the time the Hauthaway parties retained independent counsel there was no evidence of negligence and no issue to defend, advance or ameliorate.
Even were the court to conclude otherwise, the doctrine of continuing representation tolls the statute of limitations. See Murphy v. Smith, 411 Mass. 133, 137 (1991) (statute of limitations in legal malpractice cases tolled where attorney in question continues to represent the clients’ interests in the matter in question). The doctrine “recognizes that a person seeking professional assistance has a right to repose confidence in the professional’s ability and good faith and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered.” Cantu, 401 Mass. at 58. Clearly Kensington continued to represent the Hauthaway parties on June 21, 2007, when he emailed Ted Johnson to the effect that he perceived no conflict of interest. Nothing in the complaint indicates that Kensington and Rich May ceased to represent the Hauthaway parties before September 13, 2007, when the clock started. In addition, as this court has already observed, there is no indication that the Hauthaway parties had actual knowledge of appreciable harm before that date. See, e.g., Lyons v. Nutt, 436 Mass. 244, 250 (2002) (continuing representation doctrine has no effect when client has actual knowledge the he suffered appreciable harm).
Rich May also argues that the complaint fails to plead a causal connection between the alleged conflict of interest and harm to the Hauthaway parties. However, all that is required is that the plaintiff allege some degree of harm as a result of the defendant’s conduct. International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass.App.Ct. 215, 217 (1990). “[T]he extent of the injuiy need not be ascertainable at the time of the accrual of the action." Id. at 217-18. At this stage of the proceedings, the court must take all the factual allegations as well as any favorable inferences reasonably drawn from them, as true, and will dismiss a complaint only where it appears with certainty that the non-moving party is not entitled to relief under any combination of facts that he could prove in support of his claims. Sullivan v. Chief Justice for Admin. and Mgmt. of the Trial Court, 448 Mass. 15, 20-21 (2006). Here, the Hauthaway parties have asserted that Kensington drafted the Trust in such a way as to prevent another party from removing him as trustee, inflated the value of the shares of C.L.H. without regard to any impact on the Trust or C.L.H., charged legal fees that did not specify the services rendered, charged them for Kensington’s independent valuation, and continued to represent them even when Ted Johnson called into question Kensington’s possible conflict of interest. The court concludes that the complaint alleges harm sufficient to withstand the motion to dismiss Counts I and II.
Count III, asserted by Ted Johnson in his capacity as a beneficiary of the Trust, claims that Rich May aided and abetted Kensington’s breach of fiduciary duty as a trustee. A claim of aiding and abetting rests on the underlying claim of breach of fiduciary duty. See In re McMullen, 386 F.3d 320, 332 (1st Cir. 2004) (liability of aider and abettor requires that primary actor committed a wrongful act that causes injury; aider and abettor was aware of his role in the overall wrongful activity when he provided assis *334 tance; and aider and abettor knowingly and substantially assisted primary actor’s wrongful act). Although the Hauthaway parties’ complaint in Civil Action No: 10-3622-BLS 1 does not assert any claim of breach of fiduciary duty against Kensington, the Hauthaway parties have asserted a breach of fiduciary duty in their counterclaim in Civil Action No: 10-2668-BLS1 (Count II). The court assumes this claim has as its basis thefactual allegations of the counterclaim. However, the Hauthaway parties cannot sustain a claim of aiding and abetting until the underlying counterclaim against Kensington has been decided on the merits. Count III must be therefore be stayed until that time.
ORDER
For the foregoing reasons, plaintiff Nicholas Kensington’s Motion to Amend his complaint in Civil Action No. 10-2662-BLS1 is ALLOWED. In Civil Action No. 10-2662-BLS1, defendants Leopoldo Johnson, Theodore Johnson, C.L.H. Inc. and C.L. Hauthaway’s Motion to Dismiss Counts III, v. and VIII is DENIED; those Counts will, however, be stayed. The defendants’ Motion to Dismiss is DENIED as to Count IV and ALLOWED as to Counts VI and VII. In Civil Action No. 10-3622-BLS 1, defendant Rich May, P.C.’s Motion to Dismiss Counts I, II and III is DENIED; Count III will be stayed.

 Johnson claims that Kensington requested an equity position in the company, but that Johnson had reservations. Kensington asserts that Johnson told him that the Hauthaway companies were planning to provide stock options to two senior officers, and that the companies wanted to provide Kensington with similar options at the same time.

Kensington claims that he agreed that his options would be patterned on those designed for the other executives, with certain differences occasioned because he was not an employee of the companies. For example, his options vested over four years, whereas the others vested over five years to coincide with their five-year employment agreements, executed at the same time. In addition, Kensington had the right to delay the early termination of his options until such time as he shall “refuse to be available to provide service to the company.” The other agreements terminated automatically at the termination of their employment. The Option Agreement also gave Kensington the unilateral right to trigger a redemption should he refuse to provide services to the company. Kensington claims that he informed the directors, including Johnson, of all material differences, provided Johnson and Watson with draft agreements and advised them to review the proposed form with another attorney, in light of the inherent conflict of interest. Johnson claims that Kensington did not raise the possibility of a conflict of interest, and presented the board with a copy of his stock option grant for the first time at the December 4, 1997, board meeting. In sum, he maintains that Kensington withheld material information: had the board had Johnson known that Kensington obtained the options “on terms better than those offered” the other two executives, it would not have approved the grant.

Kensington asserts that, at the time, the value of his option/shares was somewhere in the $10,000-$ 15,000 range.

The complaint at paragraph 34 states that he received an offer on January 27, 2008. In paragraph 36, he states that the offer was made on January 27, 2009. Although this has created some confusion, Kensington asserts that the offer came “over nineteen months” after he exercised his option on June 6, 2007, that is sometime in January 2009. The court concludes therefore that the only offer Kensington likely received was that of $80,000 on January 27, 2009.

According to the Hauthaway parties’ complaint, Kensing-ton “attempted to influence the selection of a valuation expert retained for estate planning purposes and stated to such expert what Kensington thought was a proper valuation for C.L.H.-—a valuation that was substantially higher than the value most recently affixed to the company by an independent appraiser.” The complaint asserts that Kensington and Rich May “appear to have billed the company for Kensington’s own improper efforts to obtain a higher appraisal for the company.”

Kensington’s original complaint asserts claims against the Hauathway companies for breach of contract (Count I) and breach of the covenant of good faith and fair dealing (Count II); against C.L.H. for indemnification and advancement of fees under by-laws (Count III): against Leopoldo Johnson and Ted Johnson for intentional interference with contractual relations (Count IV) and breach of fiduciary duties (Count V); and, as against all the Hauthaway parties, quantum meruit (Count VI) and unjust enrichment (Count VII).

The complaint asserts claims against Rich May for breach of fiduciary duty (Count I); aiding and abetting breach of fiduciary duty (Count II); and, on behalf of Ted Johnson in his capacity as beneficiary of the Trust, aiding and abetting breach of trustee’s fiduciary duty (Count III).

While not properly before the court, according the Rich May’s Memorandum in Support of Defendant’s Motion to Dismiss the Hauthaway parties’ complaint, Kensington resigned as trustee on October 20, 2010.

Specifically, Kensington seeks declaratory judgment to the effect that (1) his actions as a director and/or agent of C.L.H. were lawful, appropriate, fair and in the best interests of the company; (2) that the Option Agreement was provided as compensation for his service as a director; and (3) that C.L.H. is obligated to indemnify him for costs, expenses and attorneys fees incurred in connection with this action.

The court will discuss only those counts that the Hauthaway parties seek to dismiss.

The parties agree that, pursuant to the by-laws, Delaware law governs.

With respect to Kensington’s Motion to Amend his complaint, his added claim for declaratory judgment seeks in sum a declaration regarding his claim for indemnification. The motion will be allowed, see Sharon v. City of Newton, 437 Mass. 99, 102 (2002), but, for the same reasons stated with respect to Count III of the original complaint, action on this claim will be stayed.

There is no dispute that neither Johnson nor Ted Johnson were signatories to the Option Agreement. Johnson signed only as C.L.H.’s representative.

The defendants rely on Terespolsky v. Law Offices of Stephanie K. Meilman, 2004 WL 333606 (Feb. 23, 2004) (Garsh, J.), where the court, on a motion for summary judgment, concluded that Meilman could not be held liable for intentional interference with an employment relationship between her company and an employee because she was president, clerk, treasurer, sole director, owner and sole shareholder who maintained control over all aspects of the operation of the company. This is not such a case.

The Hauthaway parties contend that Kensington used Rich May resources, including letterhead, facilities, and staff in committing the alleged misconduct at issue.