**THE MEDICAL PROFESSIONAL MUTUAL INSURANCE COMPANY, the Medical Practice Joint Underwriting Association of Massachusetts and Anthony Simons, M.D., Plaintiffs,**

v.

**BREON LABORATORIES, INC. and Sterling Winthrop, Inc., Defendants.**

**Civil Action No. 95–10483–WGY.**

United States District Court, D. Massachusetts.

June 6, 1997.

Edward D. McCarthy, McCarthy, Bouley, Foster & Eldridge, PC, Cambridge, MA, for Plaintiffs.

Peter B. Ellis, Michael Boudett, Foley, Hoag & Eliot, Boston, MA, for Defendants.

## MEMORANDUM OF OPINION

YOUNG, District Judge.

There are some who will see in this case a certain poetic justice. Here, the insurance company misreads the plain language of the Massachusetts Contribution Statute, fails in its obligations thereunder, and is thus denied contribution from an alleged joint tortfeasor, all because it did not obtain a proper release. Along the way, it also misses the applicable statutes of limitation.

The Medical Professional Mutual Insurance Co., The Medical Practice Joint Underwriting Association of Massachusetts (collectively the "Insurance Company"), and Anthony Simons, M.D. ("Simons") (collectively the "Plaintiffs") commenced this action for contribution (Counts I and IV), indemnification (I and IV),[1] chapter 93A violations (Counts II, V, VIII, and XIII), negligence (Counts VII and XII), emotional distress (Counts X, XI, XV, and XVI), and breach of warranty (Counts III, VI, IX, and XIV) against Breon Laboratories, Inc. and Sterling Winthrop, Inc. (collectively "Breon").[2] Breon moved for summary judgment on all claims primarily on the ground that the Plaintiffs' claims are barred by the applicable statutes of limitations. This Court allowed that motion by order on April 2, 1997. This opinion explains the reasoning for that decision.

### I. Background

On December 10, 1981, Carolyn Monaco was admitted to Lynn Hospital to deliver her second child. During the course of her labor, Simons, an anesthesiologist, was called to provide Mrs. Monaco with pain relief. Simons was to administer bupivacaine through injection into the lower spine. Bupivacaine is a anesthetic drug manufactured and distributed by Breon and marketed under the name Marcaine. Simons mistakenly injected the drug directly into one of Mrs. Monaco's veins. As a result, Mrs. Monaco developed severe seizures and was rendered uncon-

---

1. By stipulation, the parties voluntarily agreed to dismiss Counts I and IV to the extent they seek indemnification.

2. The named defendants, both of which were in the business of manufacturing and distributing pharmaceutical drugs, have been succeeded in interest by Sanofi Winthrop, Inc. The parties, however, have not filed a formal substitution of party.

scious. Nevertheless, the baby was delivered successfully and Mrs. Monaco was resuscitated.

Three years later in 1984, Mrs. Monaco, together with her husband and two sons (collectively "the Monacos"), commenced suit in the Massachusetts Superior Court sitting in and for the County of Essex against Simons. Mrs. Monaco alleged that she had suffered permanent neurological damage as a result of Simons' negligence. Simons' insurer, the Insurance Company, defended the action but did not implead Breon.

The case finally came to trial in October 1993 and the jury returned a $4,000,000 verdict against Simons. Simons filed a variety of post-trial motions and while those motions were pending, he reached a tentative settlement agreement on February 28, 1994 with the Monacos. The settlement agreement was executed on March 4, 1994. On March 9, 1994, because there were minor parties involved in the action, the parties filed a petition for approval of the settlement agreement pursuant to Mass. Gen. L. ch. 231, § 140C½. The Superior Court approved the petition that same day. The parties filed a stipulation of dismissal the next day, March 10, 1994.

The Plaintiffs commenced this diversity action on March 8, 1995 to recover against Breon as the manufacturer and distributor of the drug bupivacaine. The Plaintiffs allege that Breon had knowledge of the potential dangerous effects of the drug and that it failed to warn doctors, such as Simons, who were administering the drug.

## II. Discussion

### A. Contribution

The Massachusetts Contribution Statute (the "Contribution Statute"), Mass. Gen. L. ch. 231B, § 1 *et seq.*, is an adaptation of the Uniform Contribution Among Joint Tortfeasors Act. *Bishop v. Klein,* 380 Mass. 285, 294, 402 N.E.2d 1365 (1980). The Contribution Statute creates a right of contribution "where two or more persons become jointly liable in tort for the same injury ... even

though judgment has not been recovered against all or any of them." Mass. Gen. L. ch. 231B, § 1(a). Thus, a joint tortfeasor who pays damages, whether under a settlement agreement or a court imposed judgment, is entitled to contribution.[3]

This right of contribution is not automatic. A tortfeasor seeking contribution must meet certain statutory requirements. These requirements are set forth in Mass. Gen. L. ch. 231B, § 3 which provides:

(c) If there is a *judgment* for the injury against the tortfeasor seeking contribution, any separate action by him to enforce contribution must be commenced within one year after the judgment has become final by lapse of time for appeal or after appellate review.

(d) If there is *no judgment* for the injury against the tortfeasor seeking contribution, his right of contribution shall be barred unless he has ... (2) agreed while action is pending against him to discharge the common liability and has within one year after the agreement paid the liability and commenced his action for contribution.

Mass. Gen. L. ch. 231B, § 3 (emphasis added). A tortfeasor must therefore satisfy different procedural requirements in cases where judgment enters against the tortfeasor, Mass. Gen. L. ch. 231B, § 3(c), and in cases where the tortfeasor settles with the injured party, Mass. Gen. L. ch. 231B, § 3(d).

In this case, the parties dispute which provision of section 3 applies—the judgment provision or the settlement provision. Breon argues that section 3(d)(2) applies because, although there was a jury verdict when the settlement was reached, post-trial motions were pending and Simons was not yet unconditionally liable to pay the judgment. Breon therefore maintains that the Monacos' civil action was ultimately disposed through settlement and there was "no judgment" for purposes of section 3. In contrast, the Plaintiffs argue that section 3(c) applies. According to the Plaintiffs, because there was a jury verdict prior to the settlement, the court's

---

**3.** The right of contribution exists only when one tortfeasor "has paid more than his pro rata share of the common liability." Mass. Gen. L. ch. 231B, § 1(b). In addition, the tortfeasor's right to contribution is "limited to the amount paid by him in excess of his pro rata share." *Id.*

approval of the settlement agreement had the effect of an entry of final judgment.

In this case, the Court concludes that there is "no judgment" for purposes of section 3 of the Contribution Statute. After the jury verdict in the Monacos' civil action, post-trial motions were pending and the judgment had not yet become subject to execution. *See* Mass. R. Civ. P. 62(a). It was at this time that the parties entered a settlement agreement which prompted the termination of the lawsuit through the filing of a stipulation of dismissal. Under the Massachusetts Rules of Civil Procedure, a stipulation of dismissal is a "judgment" for purposes of terminating an action, *see* Mass. R. Civ. P. 58(a), but it is not a judgment in the sense of a "decree ... of the trial court finally adjudicating the rights of the parties affected." Mass. R. Civ. P. 54(a).[4] In an effort to read section 3 for internal consistency, this Court holds that the term "judgment" in section 3 contemplates a judgment as defined by Mass. R. Civ. P. 54(a).[5] As there was no Rule 54(a) judgment in the Monacos' civil action, this Court concludes that section 3(d) governs.

Having concluded that section 3(d) controls, Breon urges this Court to find that the Plaintiffs failed to satisfy the procedural niceties set forth in that provision.[6] This Court, however, need not decide these questions. As a threshold matter, the plain language of Mass. Gen. L. ch. 231B, section 3(d) requires the Plaintiffs to discharge the common liability before they may seek con-

tribution. It is the failure to establish this critical element that renders the Plaintiffs' contribution claim insufficient.

The settlement agreement contains the following release:

> [The Monacos] release and forever discharge Laurence A. Simons, M.D., the Lynn Hospital and its medical and nursing staff and any other health care provider who treated or should have treated Carolyn Monaco in connection with this incident, the Massachusetts Medical Professional Ins. Association, its predecessor, the Medical Malpractice Joint Underwriting Assoc. of Massachusetts and their present and former agents, servants, employees and/or predecessors and/or successor legal entities, and/or fiduciaries, any professional corporation with which they may be affiliated or by which they may be employed, their insurers, excess insurers and reinsurers ... of any and all claims for injuries or damages....

Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment ("Breon's Statement of Facts"), Ex. 10, Release and Settlement Agreement, at 1. The release does not mention Breon. The Plaintiffs attempt to bypass the plain language of the release by arguing that the settlement agreement did in fact discharge the common liability because the agreement called for an additional payment—the timing of which was linked to a potential action by the Insurance Company against the manufac-

---

4. Mass. R. Civ. P. 54(a) provides:

 The terms "judgment" and "final judgment" include a decree and mean the act of the trial court finally adjudicating the rights of the parties affected by the judgment, including:

 (1) judgments entered under Rule 50(b) and Rule 52(a) and (b);

 (2) judgments entered under Rule 58 upon a general verdict of a jury, or upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, or upon a special verdict under Rule 49(a) or a general verdict accompanied by answers to interrogatories under Rule 49(b).

5. If this Court were to hold otherwise (*i.e.*, that a stipulation of dismissal is a judgment under section 3), the Contribution Statute would be internally flawed. For example, in section 3(c)—applicable when there is a "judgment"—the statute of limitations is defined by reference to ap-

pellate rights. *See* Mass. Gen. L. ch. 231B, § 3(c). It is illogical to suggest that section 3(c) would apply to a settlement or stipulation of dismissal, as typically there is no appeal following an agreed upon disposition.

In addition, section 3(d)—applicable when there is "no judgment"—discusses the termination of an action during its pendency through agreement. Pursuant to Mass. R. Civ. P. 41(a), an action settled during its pendency is terminated by the filing of a stipulation of dismissal. Accordingly, the Contribution Statute, by its very language, suggests that when a stipulation of dismissal is filed, there is "no judgment" for purposes of section 3. *See* Mass. Gen. L. ch. 231B, § 3(d).

6. Breon maintains that the Plaintiffs failed both to pay the liability and file this action within one year of the settlement agreement, as required by Mass. Gen. L. ch. 231B, § 3(d).

turer.[7] The fact that the Insurance Company may have been contemplating an action against Breon, however, does not establish a discharge of the common liability. Massachusetts General Laws chapter 231B, section 4 states that "[w]hen a release or covenant not to sue . . . is given in good faith to one of two or more persons liable in tort for the same injury, *[i]t shall not discharge any of the other tortfeasors from liability unless its terms so provide.*" (emphasis added).[8] Here, the release is unambiguous and its terms do *not* release Breon.

■ As the Plaintiffs failed to discharge the common liability, they are barred from seeking contribution under section 3(d) of the Contribution Statute. The Contribution Statute was intended to foster settlements. *Bishop*, 380 Mass. at 294, 402 N.E.2d 1365. Thus, if a party settles for all joint tortfeasors, that party is rewarded with the right of contribution. *See* Mass. Gen. L. ch. 231B, § 3(d). Where, as here, however, a party settles only its own interest, the Contribution Statute gives some reward for that settlement, but not the complete reward of contribution. *See* Mass. Gen. L. ch. 231B, § 4. Pursuant to section 4 of the Contribution Statute, a settlement that does not discharge the common liability operates to reduce the amount the injured party may recover from other tortfeasors and shields the settling tortfeasor from contribution actions by other tortfeasors.[9]

**7.** Specifically, the agreement stated:
> In addition to these sums, the Massachusetts Medical Professional Insurance Association agrees to pay Carolyn Monaco her heirs, executors or assigns a sum of $400,000.00 without interest within whichever of the following times occurs first:
>> 1. 14 months from the date this executed release is received by the MMPIA;
>> 2. 12 months from the date of receipt of this executed release by the MMPIA if no claim is brought by the MMPIA in its own name or in the name of Dr. Simons against the manufacturer of the drug . . .
>> 3. Within 30 days of settlement of conclusion of litigation, all appellate rights having been exhausted, brought by the MMPIA against the manufacturer of the drug. . . .
> Breon's Statement of Facts, Ex. 10 at 4.

**8.** This Court notes that the Contribution Statute departs from the common law in that, at common law, a release by one tortfeasor actually discharged all of the other tortfeasors' liability. *Robertson v. McCarte*, 13 Mass.App.Ct. 441, 444, 433 N.E.2d 1262 (1982) (citing *Matheson v. O'Kane*, 211 Mass. 91, 93, 97 N.E. 638 [1912]).

Justice Garsh of the Massachusetts Superior Court recently explained the interplay of sections 3(d) and 4 of the Contribution Statute:

> Reading sections 3(d) and 4 together, it is apparent that there is a unified and quite logical scheme. *Section 4 applies where, as here, all the tortfeasors are not named in the release.* Section 3(d) applies where all the tortfeasors are named in the same release. A settling tortfeasor may partially pay the liability, thereby purchasing both an individual release from the plaintiff and immunity from a claim for contribution from any non-settling tortfeasor should the plaintiff ultimately recover more than the amount the settling tortfeasor paid to the plaintiff. In order to avoid the plaintiff obtaining a windfall double recovery, any amount paid in settlement is subtracted from a judgment obtained by the plaintiff against any non-settling tortfeasor. On the other hand, a settling tortfeasor may settle a claim and obtain a release for all joint tortfeasors. That costs more, but entitles the settling tortfeasor to seek contribution from any remaining tortfeasor. [Section] 4(b), was drafted to encourage settlements in multiple party tort actions by clearly delineating the effect settlement will have on collateral rights and liabilities in future litigation.

*Barrios v. Viking Seafood, Inc.*, 6 Mass. L.Rptr. 281, 1996 WL 751535, at *4 (Mass.Super.Ct. Dec. 23, 1996) (emphasis added) (citations omitted). The practical ef-

**9.** Mass. Gen. L. ch. 231B, § 4(a) provides that "[w]hen a release . . . is given in good faith . . . [i]t shall not discharge any of the other tortfeasors from liability for the injury . . . unless its terms so provide; but it shall reduce the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater. . . . " In addition, Mass. Gen. L. ch. 231B, § 4(b) provides that the release "shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

fect of the Plaintiffs' settlement with the Monacos, therefore, was 1) to limit the Monacos' theoretical recovery from Breon, *see* Mass. Gen. L. ch. 231B, § 4(a), and 2) to preclude Breon from recovering contribution from the Plaintiffs, *see* Mass. Gen. L. ch. 231B, § 4(b). It did not, however, empower the Plaintiffs to seek contribution from Breon, as the Monacos never released their direct claim against Breon.[10] Accordingly, this Court entered summary judgment for Breon on the contribution claims.

### B. Negligence, Warranty and Chapter 93A

Breon also moves for summary judgment on several grounds with respect to the remaining claims for negligence, breach of warranty, violations of chapter 93A, and emotional distress.[11] This Court addresses only the most persuasive of Breon's arguments.

Breon contends that all of the remaining claims fail as they were commenced outside the applicable limitations period. Facially, Breon appears correct. The incident giving rise to this dispute occurred in 1981—a date which would render all of the remaining claims time barred.[12] The Plaintiffs respond, however, that this case was timely filed because the causes of action did not begin to accrue until a much later date.

 Generally, a cause of action accrues when the plaintiff receives notice that she has suffered an injury as a result of the defendant's conduct. *White v. Peabody Constr. Co.*, 386 Mass. 121, 129, 434 N.E.2d

1015 (1982). While the plaintiff need not know the full extent of the harm suffered at the time of accrual, some degree of harm or injury is necessary. *International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis*, 29 Mass.App.Ct. 215, 217–18, 560 N.E.2d 122 (1990). In this case, the Plaintiffs maintain that the Insurance Company suffered appreciable harm only when the settlement was approved on March 9, 1994, and that Dr. Simons first suffered appreciable harm when he hired an attorney out of his own pocket in 1993.

The Plaintiffs base their argument primarily on the case of *International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass.App.Ct. 215, 560 N.E.2d 122 (1990). In that case, International Mobiles entered into a settlement agreement after a lengthy lawsuit and soon after was informed that its insurance company would not fully cover the cost of defending the lawsuit. International Mobiles then commenced an action for negligence against its insurance broker alleging that the broker had failed properly to advise it with respect to its insurance needs. *Id.* at 216–17, 560 N.E.2d 122. Although the action was filed more than three years after the negligent advice, the court nevertheless held that the case was timely filed. *Id.* at 220, 560 N.E.2d 122. The court reasoned that the cause of action did not accrue until the date, shortly after the settlement agreement, when International Mobiles learned that its insurer would not bear the full cost of its defense. Until that time, the court explained, Inter-

---

10. This Court recognizes that, at the time of the settlement agreement, the statute of limitations had extinguished any claim by the Monacos against Breon. This fact, however, does not change the above analysis, as Breon was a joint tortfeasor for purposes of the Contribution Statute. *See McGrath v. Stanley*, 397 Mass. 775, 781, 493 N.E.2d 832 (1986) ("An action for contribution is not barred if, at the time the tortious activity occurred, the party from whom contribution is sought could have been held liable in tort."); *Hayon v. Coca Cola Bottling Co. of New England*, 375 Mass. 644, 648–49, 378 N.E.2d 442 (1978).

11. Breon argues that 1) the undisputed facts show that Simons suffered no independent economic harm because the Insurance Company paid all of the litigation expenses; 2) the jury's verdict in the Monaco action establishes that

Simons, not Breon, was negligent, and hence any loss was not proximately caused by Breon; and 3) "the claims for negligence, breach of warranty, and violation of chapter 93A are attempts by [the Insurance Company] to escape the substantive bounds of the doctrine of indemnity and to transfer its entire loss to Breon." Defendant's Memorandum in Support of Motion for Summary Judgment, at 10. This Court does not reach the merits of these arguments given the conclusion reached above.

12. The applicable statute of limitations for these claims are 1) negligence, three years, Mass. Gen. L. ch. 260, § 2A; 2) breach of warranty, three years, Mass. Gen. L. ch. 106, § 2–318; 3) chapter 93A, four years, Mass. Gen. L. ch. 260, § 5A; and 4) emotional distress, three years, Mass. Gen. L. ch. 260, § 2A.

national Mobiles had not received any notice that it had suffered any harm as a result of the defendant's negligence. *Id.*

The case at bar, however, is readily distinguishable from *International Mobiles.* Here, the Insurance Company incurred an appreciable injury in 1985 when it first began to pay out of pocket legal fees. *See Levin v. Berley,* 728 F.2d 551, 553–54 (1st Cir.1984). Similarly, Simons suffered harm in the form of emotional distress and damage to reputation no later than the commencement of the Monacos' action against him in 1984, if not as early as the time of his negligent conduct in 1981. Unlike *International Mobiles,* therefore, this *is* a case "where some damage had been sustained, as by payment of legal fees, but its full extent was unknown." *International Mobiles,* 29 Mass.App.Ct. at 220, 560 N.E.2d 122. Accordingly, this Court concluded that the claims for negligence, breach of warranty, chapter 93A violations, and emotional distress were barred by the applicable statutes of limitation.

## III. Conclusion

For the reasons stated above, this Court granted Breon's motion for summary judgment.