NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1543                                      Appeals Court

COMMONWEALTH  vs.  TRADITION (NORTH AMERICA) INC.; RONALD JAMPEL
           & others,[1] third-party defendants.


No. 15-P-1543.

Suffolk.     October 5, 2016. - February 21, 2017.

Present:  Meade, Milkey, & Kinder, JJ.


Bonds, Tax-exempt.  Contribution.  Contract, Performance and
     breach, Implied covenant of good faith and fair dealing,
     Indemnity, Bidding for contract, Misrepresentation, Unjust
     enrichment, Interference with contractual relations,
     Settlement agreement, Release from liability.  Indemnity.
     Massachusetts False Claims Act.  Consumer Protection Act,
     Unfair or deceptive act.  Deceit.  Fraud.  Conspiracy.
     Unjust Enrichment.  Unlawful Interference.  Release.
     Limitations, Statute of.  Practice, Civil, Enforcement of
     liability on bond, Joinder of claims, Damages.


     Civil action commenced in the Superior Court Department on
November 5, 2010.

---

[1] Steven E. Goldberg, Trinity Plus Funding Company LLC, and
FSA Capital Management Services, LLC.  We spell the parties'
names as they appear in the second amended third-party
complaint.  Prior to the entry of judgment in this case,
Tradition (North America) Inc.'s third-party claims against
Adrian Scott-Jones and Capital Financial Partners, Inc., were
resolved by settlement; they are not parties to this appeal.

Motions to dismiss a third-party complaint against certain third-party defendants were heard by Frances A. McIntyre, J., and a separate motion to dismiss the third-party complaint against another defendant was considered by Paul D. Wilson, J.

John E. Roberts (Michael R. Hackett also present) for Tradition (North America) Inc.
Joseph J. Bial, of the District of Columbia, for FSA Capital Management Services, LLC.
Douglas L. Wald, of the District of Columbia (Kevin P. Martin also present) for Trinity Plus Funding Company LLC.
Julia McLetchie for Steven E. Goldberg.
Jeremy M. Sternberg, for Ronald Jampel, was present but did not argue.

KINDER, J.  The Commonwealth brought this enforcement action against the defendant, Tradition (North America) Inc. (Tradition), a broker for transactions involving municipal bond derivatives, claiming that Tradition engaged in bid rigging and other deceptive practices that harmed the Commonwealth in violation of the Consumer Protection Act, G. L. c. 93A, § 2, and the False Claims Act, G. L. c. 12, § 5B.  Tradition denied the allegations, asserting that it, too, was a victim of the alleged bid-rigging scheme.  Tradition filed third-party claims against individuals and corporations with whom it had consulted in the allegedly fraudulent transactions, including Ronald Jampel, Steven E. Goldberg, Trinity Plus Funding Company LLC (Trinity), and FSA Capital Management Services, LLC (FSA) (collectively, the third-party defendants).  The third-party complaint sought contribution from the third-party defendants pursuant to G. L.

c. 231B, § 1(a), for any liability Tradition might have to the Commonwealth (contribution claims). It also alleged various other claims, including breach of contract, breach of the implied covenant of good faith and fair dealing, common-law indemnification, unfair and deceptive trade practices, fraud and deceit, intentional and negligent misrepresentation, civil conspiracy, unjust enrichment, and tortious interference with contractual relations (noncontribution claims).

On motions filed pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), a Superior Court judge[2] dismissed Tradition's third-party claims on multiple grounds, principally that the contribution claims were foreclosed by Tradition's failure to secure the release of claims against the third-party defendants in its settlement with the Commonwealth, and the noncontribution claims were time barred by the applicable statutes of limitation. Tradition appeals.

For the reasons that follow, we conclude that the contribution claims against all third-party defendants, as well as the claims for breach of contract and breach of the implied

---

[2] Two judges acted on the motions to dismiss. In a comprehensive memorandum and order, the first judge allowed motions to dismiss as to Jampel, Trinity, and FSA. In addressing Goldberg's subsequent motion to dismiss, the second judge adopted all of the first judge's reasoning, allowed the motion, and entered final judgment as to all of the third-party defendants. Because the judges' analyses of the issues are identical, we refer to the judges in the singular.

covenant of good faith and fair dealing against Jampel, were properly dismissed. We conclude that the dismissal of the remaining noncontribution claims was error.

Background. We summarize the facts alleged in Tradition's seventy-page second amended third-party complaint (the third-party complaint), accepting them as true for the purpose of our review of the motions to dismiss. Harrington v. Costello, 467 Mass. 720, 724 (2014).

1. Guaranteed investment contracts. Government and quasi government entities, like the Massachusetts Water Pollution Abatement Trust (MWPAT), often raise money by issuing tax-exempt municipal bonds. If all of the proceeds from a bond offering are not used immediately, such an entity often invests idle proceeds in a municipal bond derivative,[3] like a government investment contract (GIC), to earn interest. An entity selects a GIC, typically offered by major financial institutions, through a competitive bidding process conducted by an impartial third-party broker. Bids are solicited from at least three

---

[3] In the Commonwealth's complaint against Tradition, "municipal bond derivatives" are defined as follows:

"(i) securities and other instruments used to reinvest the proceeds of a tax-exempt municipal bond issue including but not limited to investment agreements . . . paying a stated rate of return for such reinvested proceeds; which investment agreements are sometimes known as "Guaranteed Investment Contracts" . . . and (ii) instruments used to hedge interest rate risk relating to a tax-exempt municipal bond issue."

parties.  The broker distributes the issuing entity's terms and conditions prior to conducting an auction.  By submitting a bid at an auction, a bidder represents that it did not consult with any other bidder and was not given a "last look" at competing bids.

2.  <u>Tradition and the consultants</u>.  Tradition is a subsidiary of Compagnie Financière Tradition (Compagnie), and provides brokerage services to a select group of sophisticated institutional clients.  Compagnie is the third largest broker of such services in the world.  Tradition first entered the GIC market as a broker in 1998, after being introduced to Jampel and Adrian Scott-Jones (the consultants).  The consultants proposed to conduct GIC auctions on Tradition's behalf in full compliance with all applicable laws and regulations.  In reliance on those representations, Tradition entered into an agreement (the consulting agreement) with the consultants' employer, Capital Financial Partners, Inc. (CFP), pursuant to which CFP and the consultants agreed to "work on an exclusive basis on business opportunities acceptable to Tradition . . . including, but not limited to, [GICs]."  Over the next ten years, CFP and the consultants conducted approximately 138 GIC auctions across the country on Tradition's behalf.  At all times, CFP and the consultants certified to Tradition that the auctions were

conducted in a lawful manner. According to the Commonwealth, however, that was not always true.

3. The 2000 and 2004 MWPAT GIC auctions. Tradition served as the broker for MWPAT in connection with GIC auctions held on October 19, 2000, and November 2, 2004, at which Trinity and FSA were the respective winning bidders. Prior to each auction, one of the consultants, Scott-Jones, allegedly informed Goldberg, who was representing Trinity at the first auction and FSA at the second, of the interest rate needed to win the auction. Armed with that information, Trinity and FSA lowered their previously submitted bids and still won the auctions. As a result, MWPAT was deprived of a higher rate of return over the terms of those two contracts. Tradition denies that it knew of the alleged fraudulent conduct, noting, among other things, that it had no financial incentive to engage in such wrongdoing, since it received a flat fee for both auctions that was not contingent upon the interest rate, yield, or other terms associated with the winning bid.

4. March, 2007, Department of Justice subpoena. In March, 2007, Tradition received a subpoena from the United States Department of Justice (DOJ) seeking documents concerning numerous types of "municipal contracts" awarded pursuant to competitive bidding, including GICs, anywhere in the country. The subpoena sought documents related to certain specific

persons and companies: "CDR Financial Products of Beverly Hills, California, and/or David Rubin, and/or companies controlled by David Rubin." The subpoena did not identify any specific State or transaction that was under scrutiny. Nor did it identify Tradition, CFP, or the consultants as subjects or targets of the investigation.

Tradition retained outside counsel to respond to the subpoena and conduct an internal investigation. Outside counsel interviewed Scott-Jones and Jampel, both of whom denied any wrongdoing. Outside counsel also reviewed documents responsive to the subpoena and, ultimately, concluded that there was no evidence of wrongdoing.

5. May 27, 2008, call from DOJ. On or about May 27, 2008, Tradition received a telephone call from DOJ indicating that the consultants had allegedly engaged in wrongdoing in connection with GIC auctions allegedly brokered on behalf of Tradition. DOJ uncovered the alleged wrongdoing by listening to telephone conversations recorded by, among others, Trinity and FSA. Those recordings had not been available to Tradition during its internal investigation. According to Tradition, this May 27, 2008, telephone call was the earliest that it knew, or reasonably could have known, of any alleged wrongdoing.

6. The swap transactions. On or about June 2, 2008, Tradition further learned that CFP and the consultants were

secretly awarded swap transactions[4] and provided with other revenue by Goldberg, Trinity, and FSA in exchange for sharing confidential bidding information.  The swap transactions related to the MWPAT GIC transactions at issue or other GIC transactions brokered in Tradition's name.  Though the swaps allegedly were awarded as a bribe, Tradition maintains that they served a legitimate purpose by helping the issuing entities manage interest rate exposure.  Tradition further asserts that under its consulting agreement with CFP it was entitled to the compensation earned in connection with those swap transactions, as well as the other revenue provided to CFP and the consultants.

Discussion.  1.  The contribution claims.  While the motions to dismiss were pending, the Commonwealth and Tradition entered into a settlement agreement in which Tradition agreed to make a payment to the Commonwealth in exchange for dismissal and release of the Commonwealth's claims against Tradition.  The judge concluded that Tradition's contribution claims were barred because the settlement agreement did not discharge the common

---

[4] According to the third-party complaint, "A swap is a derivative in which the counterparties exchange certain benefits of one financial instrument for those of another."

liability of all joint tortfeasors, a statutory prerequisite for contribution.[5] We agree.

We review the dismissal de novo, accepting the allegations in the third-party complaint as true and drawing all reasonable inferences in Tradition's favor. Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). In Massachusetts, claims for contribution are governed by a statutory scheme adapted from the Uniform Contribution Among Tortfeasors Act. See G. L. c. 231B, §§ 1-4 (act), inserted by St. 1962, c. 730, § 1. Under the act, "a joint tortfeasor who pays damages, whether under a settlement agreement or a court imposed judgment, is entitled to contribution." Medical Professional Mut. Ins. Co. v. Breon Labs., Inc., 966 F. Supp. 120, 122 (D. Mass. 1997). Here, Tradition seeks contribution under § 1(a) of the act: "where two or more persons become jointly liable in tort for the same injury . . . , there shall be a right of contribution among them even though judgment has not been recovered against all or any of them."

The act, however, contains certain conditions that must be satisfied before a contribution claim can proceed. As relevant here, § 3(d)(2) of the act provides that a party like Tradition is barred from pursuing a claim for contribution unless, by its

---

[5] The judge found that a separate settlement between MWPAT and Trinity barred Tradition's contribution claim against Trinity. On appeal, Tradition has abandoned the claim.

settlement, it has "agreed . . . to discharge the common liability and has within one year after the agreement paid the liability and commenced [its] action for contribution."  Section 4(a) of the act further provides that "[w]hen a release . . . is given in good faith to one of two or more persons liable in tort for the same injury . . . [i]t shall not discharge any of the other tortfeasors from liability for the injury unless its terms so provide."

Here, the settlement agreement released only Tradition. The agreement stated expressly that it did not extend to Jampel and Scott-Jones.  Nor did it release any of the other third-party defendants.  Tradition, therefore, did not "discharge the common liability" of Jampel, Goldberg, or FSA.  See Medical Professional Mut. Ins. Co., 966 F. Supp. at 123-124 (where settlement agreement in underlying suit failed to secure release of third-party defendant joint tortfeasor, §§ 3[d][2] and 4[a] of act barred third-party plaintiffs from seeking statutory contribution); Spinnato v. Goldman, 67 F. Supp. 3d 457, 467 (D. Mass. 2014) (under act, "a claim for contribution . . . is barred unless a judgment or settlement has discharged the common liability").

Tradition contends that it was not required to release the third-party defendants in its settlement with the Commonwealth because, at the time the settlement agreement was signed, the

statutes of limitation had already expired on any claims the Commonwealth might have had against them. Thus, Tradition argues, Jampel, Goldberg, and FSA had no liability left to be discharged. In analyzing this argument, "[w]e begin with the canon of statutory construction that the primary source of insight into the intent of the Legislature is the language of the statute." Deutsche Bank Natl. Trust Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 253 (2015), quoting from International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). Therefore, we turn to the language of the act.

Section 3(d) of the act provides that a "right of contribution shall be barred unless [the moving party] has . . . (2) agreed while action is pending against [it] to discharge the common liability" (emphasis added). We discern no ambiguity in this statutory language. Because Tradition's settlement with the Commonwealth did not provide for the extinguishment of the third-party defendants' liability, its contribution claims are barred.[6]

---

[6] Our interpretation of the act's requirements is in accord with that of other courts interpreting statutes modeled on the Uniform Contribution Among Tortfeasors Act. See, e.g., G & P Trucking v. Parks Auto Sales Serv. & Salvage, Inc., 357 S.C. 82, 88 (Ct. App. 2003). There, in response to the same argument now advanced by Tradition, the court held that, as a prerequisite to a contribution claim, the extinguishment of a joint tortfeasor's liability to an underlying plaintiff must have resulted directly from the settlement agreement itself, rather than merely from the expiration of the statute of limitations. Last, the court

This interpretation is consistent with the underlying purpose of the act -- a "more equitable distribution of that burden among those liable in tort for the same injury." Hayon v. Coca Cola Bottling Co. of New England, 375 Mass. 644, 648 (1978). Tradition had a right to pursue contribution claims against joint tortfeasors to insure an equitable distribution of liability. Before doing so, however, Tradition was required by the act to secure the release and discharge of common liability. Having elected to negotiate and secure only an individual release and discharge, Tradition is barred from pursuing contribution claims against Jampel, Goldberg, and FSA.[7]

2. The noncontribution claims. The judge determined that Tradition's noncontribution claims were subject to dismissal on multiple grounds. We address each of them in turn.

---

noted that the running of the statute of limitations does not, in and of itself, "extinguish" a tortfeasor's liability, as the running of the statute can be subject to waiver, tolling, and estoppel. Id. at 89. See, e.g., our discussion in part 2.a., infra.

[7] This result is consonant with the goal of creating a "more equitable distribution" of liability among joint tortfeasors. It was presumably open to Tradition to negotiate a settlement with the Commonwealth that would have released all of the third-party defendants. That would have "cost[] more, but [would have] entitle[d] [Tradition] to seek contribution from any remaining tortfeasor. [Section] 4(b) [of the act] was drafted to encourage settlements in multiple party tort actions by clearly delineating the effect settlement will have on collateral rights and liabilities in future litigation." Medical Professional Mut. Ins. Co., 966 F. Supp. at 124, quoting from Barrios v. Viking Seafood, Inc., 6 Mass. L. Rptr. 281 (1996).

a.  The statutes of limitation.  The judge concluded that all of Tradition's noncontribution claims were time barred because they were filed after the applicable limitations periods had expired.  In our de novo review, we bear in mind that "where, as here, the plaintiff has claimed a trial by jury, any disputed issues relative to the statute of limitations ought to be decided by the jury."  Riley v. Presnell, 409 Mass. 239, 248 (1991).  Dismissal pursuant to rule 12(b)(6) based upon the expiration of a statute of limitations is appropriate where it is undisputed from the face of the complaint that the action was commenced beyond the applicable deadline.  See, e.g., Epstein v. Seigel, 396 Mass. 278, 278-279 (1985) (upholding dismissal where the "allegations of the complaint clearly reveal that the action was commenced beyond the time constraints of the statute of limitations").  Compare Harrington, 467 Mass. at 731-733 (court rejected plaintiff's discovery rule and fraudulent concealment arguments and affirmed dismissal).

The tort[8] and G. L. c. 93A claims against Jampel, Goldberg, Trinity, and FSA are subject, respectively, to three and four year statutes of limitation that typically accrue from the date of injury.  See G. L. c. 260, §§ 2A (torts), 5A (c. 93A); Stark

---

[8] Fraud and deceit, intentional and negligent misrepresentation, civil conspiracy, unjust enrichment, and tortious interference with contractual relations.

v. Advanced Magnetics, Inc., 50 Mass. App. Ct. 226, 232 (2000).[9] However, recognizing the unfairness of a rule that allows statutes of limitation to run even before a plaintiff knew or reasonably should have known that it may have been harmed, the Supreme Judicial Court has adopted "a discovery rule for the purpose of determining when a cause of action accrues, and thus when the statute of limitations starts to run." Bowen v. Eli Lilly & Co., 408 Mass. 204, 205 (1990). "This rule prescribes as crucial the date when a plaintiff discovers, or any earlier date when [it] should reasonably have discovered, that [it] has been harmed or may have been harmed by the defendant's conduct." Id. at 205-206. See Doe v. Creighton, 439 Mass. 281, 283 (2003) (rule requires proof of "both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge"); Szymanski v. Boston Mut. Life Ins. Co., 56 Mass. App. Ct. 367, 371 (2002). Under the discovery rule, the limitation period accrues when the plaintiff has "sufficient notice of two related facts: (1) that [it] was harmed; and (2) that [the] harm was caused by the defendant's conduct." Harrington, 467 Mass. at 725. A plaintiff may be put on "inquiry notice" where it is

---

[9] The claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Jampel, which are subject to a six-year limitation period, see G. L. c. 260, § 2; Patsos v. First Albany Corp., 433 Mass. 323, 327 n.6 (2001), were dismissed on other grounds. See part 2.b.ii., infra.

informed of facts that would suggest to a reasonably prudent person in the same position that an injury has been suffered as a result of the defendant's conduct.  See Bowen, supra at 208; Szymanski, supra.  Applying these principles here, we conclude it was error to dismiss the noncontribution claims based on the statutes of limitation.

Here, the judge concluded that Tradition was on inquiry notice on March 7, 2007, when it received the DOJ subpoena. Because the original third-party complaint was filed on April 4, 2011, more than four years later, the judge ruled that the noncontribution claims were barred by the statutes of limitation.

However, there is a factual dispute as to when Tradition was on inquiry notice of its potential third-party claims based on bid rigging by its consultants.  According to the third-party complaint, Tradition was first on notice of the potential third-party claims on May 27, 2008, when DOJ called Tradition and directly alleged that the consultants had engaged in wrongdoing. If Tradition was not on inquiry notice until that date, the claims were brought within the statutes of limitation.  The third-party defendants argue that the judge correctly determined that Tradition was on inquiry notice at least as early as March 7, 2007, when it received the DOJ subpoena seeking information related to GIC contracts, and initiated its own investigation.

They emphasize that Tradition was a sophisticated broker and that at the time there was ample public information available regarding other government investigations in the municipal derivatives industry to trigger inquiry notice.[10]

Our focus at this stage must be on the allegations in the third-party complaint. Tradition asserts that the March 7, 2007, subpoena from DOJ generally sought documents concerning a wide variety of "municipal contracts" awarded pursuant to competitive bidding, not just GICs, from across the country. The subpoena did not identify the two MWPAT GIC auctions now at issue or even specifically seek documents related to MWPAT or Massachusetts. Nor did the subpoena identify Tradition, CFP, or the consultants as subjects or targets of the investigation. In fact, the only entities and individuals specifically identified in the subpoena had no connection to Tradition's GIC business. Accepting these facts as true, as we must, we cannot conclude that it is undisputed from the face of the complaint that

---

[10] The judge charged Tradition with knowledge of (1) a November 15, 2006, article in the trade publication "Bond Buyer," reporting on a Federal Bureau of Investigation raid and DOJ industry-wide investigation of anticompetitive practices in the municipal bond industry; and (2) Bank of America's February, 2007, entry into a leniency program due to similar practices. Neither is referenced in or attached to the third-party complaint. As consideration of "matters outside the pleading" can result in conversion of a motion to dismiss to one for summary judgment, see rule 12(b), the parties dispute whether this information was properly considered here. Having reviewed the information and concluded that it does not alter our result, we do not reach that issue.

receipt of the subpoena put Tradition on inquiry notice of its potential third-party claims.

The judge placed particular emphasis on the fact that Tradition, upon receiving the DOJ subpoena, hired outside counsel to conduct an internal investigation. She rejected Tradition's assertion that the investigation did not uncover any wrongdoing. Rather, she found that the investigation was deliberately conducted without sufficient "due diligence," such that it "border[ed] on willful ignorance." That conclusion may or may not be borne out by further discovery, but it is not supported by the third-party complaint. The judge found facts and drew inferences about what Tradition should have known and when Tradition should have known it "[b]ased on [her] general experience before and on the bench." While a jury may ultimately agree, it was not clear from the face of the third-party complaint that Tradition's noncontribution claims were untimely.[11] In short, where the date triggering the statutes of limitation is disputed, as it is in this case, the wiser course is to present the matter to the fact finder. See, e.g., Kennedy v. Goffstein, 62 Mass. App. Ct. 230, 235 (2004).

b. Other grounds for dismissal of noncontribution claims. The judge concluded that even if Tradition's noncontribution

---

[11] Based on our conclusion, we need not reach the question whether the statutes of limitation were tolled based on fraudulent concealment. See G. L. c. 260, § 12.

claims against Jampel, Goldberg, Trinity, and FSA were timely, they were subject to dismissal on alternate, independent grounds.

i. Joinder. First, the judge reasoned that these claims were dependent on survival of the contribution claims.[12]  We disagree.

It is undisputed that Tradition, at the time it filed the third-party complaint (before it reached a settlement with the Commonwealth), had the right to assert contribution claims against Jampel, Goldberg, Trinity, and FSA.  See Mass.R.Civ.P. 14(a), as amended, 385 Mass. 1216 (1982) ("At any time after commencement of the action a defending party, as a third-party plaintiff, may . . . cause a summons and complaint to be served upon a person who is or may be liable to him for all or part of the plaintiff's claim against him").  Tradition also had a right to assert other, independent claims against the third-party defendants at the same time.  See Mass.R.Civ.P. 18(a), 365 Mass. 764 (1974) ("A party asserting a claim to relief as . . . [a] third party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable, or both, as [it] has against an opposing party").  No one disputes that

_____

[12] Although this part of the judge's decision addressed only the noncontribution claims with respect to Trinity, our discussion applies equally to those claims as to the remaining third-party defendants.

the Superior Court had subject matter jurisdiction over the noncontribution claims.[13]  See Mass.R.Civ.P. 12(b)(1), 365 Mass. 754 (1974).

Even if the noncontribution parties and claims had been improperly joined in this action, their dismissal on that ground, upon the dismissal of the contribution claims, is precluded by our rules.  See Mass.R.Civ.P. 21, 365 Mass. 767 (1974) ("Misjoinder of parties is not ground for dismissal of an action. . . .  Any claim against a party may be severed and proceeded with separately").  See also Smith & Zobel, Rules Practice § 21.2, at 320 (2d ed. 2006) (rule 21 was "designed to cover actions . . . where the requirements for permissive joinder have not been satisfied").  Simply put, we see no legal basis for the dismissal of the noncontribution claims on the basis of our rules as to joinder.

In dismissing the noncontribution claims "without prejudice" the judge recognized that, in effect, the dismissal was _with_ prejudice because, at the time of dismissal, the claims were time barred by the statutes of limitation.  However, even under circumstances where a court has the discretion to dismiss

---

[13] This distinguishes the present case from those cited by Trinity, in which a Federal court, after the dismissal of all predicate Federal claims, exercised discretion and dismissed supplemental State law claims over which it did not otherwise have subject matter jurisdiction.  See 28 U.S.C. § 1367(c)(3) (2012).

a claim, such a severe sanction should be imposed only in extraordinary circumstances and as a matter of last resort.[14] See, e.g., Monahan v. Washburn, 400 Mass. 126, 128-129 (1987) ("Involuntary dismissal is a drastic sanction which should be utilized only in extreme situations. . . . The law strongly favors a trial on the merits of a claim"). Applying this principle here, where the noncontribution claims were dismissed only due to the failure of the predicate contribution claims, and such dismissal would bar subsequent litigation of the noncontribution claims because the limitations periods have expired, we conclude that the drastic sanction of dismissal is not justified by extraordinary circumstances.

ii. Piercing the corporate veil -- Jampel. As an alternative ground, the judge also dismissed the noncontribution claims against Jampel because Tradition failed to sufficiently allege facts to establish a basis to pierce the corporate veil of CFP and hold Jampel personally liable. "The corporate veil 'may be pierced where' the corporate principal exercises (1) 'some form of pervasive control' over the activities of the

---

[14] Trinity cites to what it suggests is contrary authority. Unlike here, however, the cases cited involve the application of rules that mandate dismissal under specific circumstances. See Mass.R.Civ.P. 4(j), as appearing in 402 Mass. 1401 (1988) (action "shall be dismissed" unless plaintiff shows "good cause" why service was not made within ninety days); Mass.R.Civ.P. 25(a)(1), 365 Mass. 771 (1974) ("[T]he action shall . . . be dismissed unless the failure of the surviving party to move for substitution was the result of excusable neglect").

corporation, and (2) 'there is some fraudulent or injurious consequence' as a result." Kraft Power Corp. v. Merrill, 464 Mass. 145, 152 (2013), quoting from Scott v. NG US 1, Inc., 450 Mass. 760, 767 (2008). We agree that the third-party complaint, even when viewed in a light most favorable to Tradition, fails to adequately set forth a basis for piercing the corporate veil. We disagree, however, that this requires dismissal of all noncontribution claims against Jampel.

The consulting agreement, while signed by Jampel, was between CFP and Tradition. To the extent that Tradition seeks to hold Jampel liable for a breach of that contract, therefore, it would need to pierce the corporate veil. Because Tradition failed to plead a sufficient basis for doing so, the claims against Jampel for breach of contract and breach of the implied covenant of good faith and fair dealing were properly dismissed.

On the other hand, it is not necessary to pierce the corporate veil to hold Jampel liable on the remaining noncontribution claims. It is true that "[o]fficers and employees of a corporation do not incur personal liability for torts committed by their employer merely by virtue of the position they hold in the corporation." Lyon v. Morphew, 424 Mass. 828, 831 (1997). However, "[e]mployees are liable for torts in which they personally participated." Id. at 831-832. Tradition has sufficiently alleged that Jampel personally

participated in the wrongful conduct that gave rise to the tort-based noncontribution claims.

iii. <u>Damages</u>.  The judge also dismissed the noncontribution claims against FSA for Tradition's failure both to plead damages with specificity and to establish a causal connection between those damages and the alleged scheme to defraud.  A plaintiff, however, need only plead special damages with specificity, see Mass.R.Civ.P. 9(g), 365 Mass. 751 (1974), and "[r]elief in the alternative or of several different types may be demanded," Mass.R.Civ.P. 8(a), 365 Mass. 749 (1974).  Tradition has alleged damages in several categories:  "swaps revenue" not shared with Tradition, fraudulent travel and entertainment reimbursement, and costs associated with its own investigation.  At this stage, we need not decide the scope of damages to which Tradition may be entitled should it establish liability at trial.  On the narrow question whether the third-party complaint adequately alleged some damages, we conclude that, at a minimum, Tradition has adequately pleaded that FSA's participation in the scheme damaged Tradition in the amount of Tradition's costs to comply with the DOJ's subpoena and investigation.[15]  See, e.g., <u>Siegel</u> v. <u>Berkshire Life Ins. Co</u>.,

_____

[15] Trinity suggests that the noncontribution claims asserted against it were also dismissed on this basis.  While that is not clear from the record, our reasoning as to FSA applies equally to Trinity, Jampel, and Goldberg.

64 Mass. App. Ct. 698, 703 (2005) ("If a c. 93A violation forces someone to incur . . . expenses that are not simply those incurred in vindicating that person's rights under the statute, those fees may be treated as actual damages in the same way as other losses of money or property").

iv. <u>Additional grounds for dismissal</u>. Tradition's civil conspiracy claim was dismissed as to all third-party defendants for failure to state a claim on an underlying independent tort. Because we reverse the dismissal of the underlying tort claims, the dismissal of the civil conspiracy claim must also be reversed.

Tradition's claims against FSA for fraud and tortious interference with contractual relations were dismissed on the ground that Tradition was improperly seeking to recover the fruits of illegal transactions (i.e., compensation and revenue received by CFP and the consultants as bribes). While we agree that Tradition is not entitled to recover the fruits of illegal activity, we cannot conclude at this early stage that the swaps transactions at issue were illegal.[16]

<u>Conclusion</u>. So much of the judgment as dismissed the contribution claims against all the third-party defendants, as

---

[16] The third-party complaint included a claim for common-law indemnification from Jampel. The indemnification claim was not addressed by the judge in her memorandum of decision. We see no basis to dismiss the claim.

well as the claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Jampel, are affirmed.  In all other respects, the judgment is reversed.

<u>So ordered</u>.